STONE *et al.. Appellants*, v. SPENCER.

1. **Fraudulent Conveyances.** If a debtor sells his goods in order to defraud his creditors, and the vendee purchases in order to aid in the perpetration of the fraud, the sale is void as against creditors, no matter what price was paid, or how early after the sale possession was taken, or how notorious the change of possession.

2. ———: ATTACHMENT: EXEMPTION: BURDEN OF PROOF. Where the right of an attaching creditor is contested by a transferee of the debtor on the ground that the goods in controversy were exempt from attachment in the hands of the debtor; *Held,* that the burden of proving such exemption was on the transferee.

3. **Newly Discovered Evidence,** on which a motion for a new trial was based in this case; *Held,* cumulative and trivial.

4. **Practice:** INSTRUCTIONS. Where a case is tried by the court below without a jury, this court cannot say that a declaration by the trial court that upon' the pleadings and the evidence the plaintiff was not entitled to recover, was error, without holding that the finding and judgment were not warranted by the law and the evidence.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge.

AFFIRMED.

*R. S. Musser* for appellants.

*Judson & Motter* for respondent.

HENRY, J.—Plaintiffs, husband and wife, sued Spencer in the circuit court of Buchanan county for the recovery of the following specific personal property, viz: one cream-colored mare, one top side-spring buggy and one set of

harness.    The defendant's answer was a denial that plaint-
iffs owned or were entitled to the possession of the prop-
erty, and on a trial he obtained a judgment, from which
plaintiffs have appealed

Tele Stone, the wife, testified that she purchased the
property from Isaac Samuels at her husband's store in St.
Joseph on Saturday afternoon, September 14th, 1878, and
paid the purchase money and received his bill of sale for
the property the same afternoon; that the price paid was
$350, and that the property was worth that sum; that she
did not make the purchase with the intent to aid Samuels
in defrauding his creditors; that the purchase was made
in the store, and that he went back to the desk, where her
husband was, to get his money; that she did not see it
paid; that on Monday morning, September 16th, she and
Samuels went to the livery stable where Samuels kept the
mare to get her, but the proprietor was absent, and that
she returned again alone about nine o'clock a. m. and saw
one Fleming, who was managing the stable, showed him
her bill of sale, and told him she wanted to take the mare
to another stable, but finally agreed with him on terms for
boarding the mare, and left the mare, harness and buggy.
Plaintiffs also offered in evidence the proceedings in an
attachment suit wherein A. Walter & Co. were plaintiffs,
and Samuels was defendant, and the levy made by the
sheriff of said county, defendant herein, on said property,
at five o'clock p. m. on the 16th day of September, 1878.
Fleming testified to the same facts stated by Mrs. Stone in
relation to her visit to the stable and what occurred be-
tween them.

Defendant introduced Winslow Judson, who testified
that on the day the attachment was levied Samuels came
to his office to see about the claim of A. Walter & Co.,
which he had for collection; said he was unable to pay,
was going west, and asked witness if he should make a
bill of sale of his horse and buggy to some friend if his
creditors could then touch them.    Witness told him he

had no right to ask him that question; that he should consult his attorney; that he knew he had a claim against him for collection. That, within two hours after this conversation witness inquired of the foreman in charge of the stable where the mare was kept, and was told by him that she was still there in Samuels' name. Spencer testified that he had other attachments against Samuels, under which he had attached all his stock in trade in his jewelry store, in St. Joseph, on the 16th day of September, at 2:20 o'clock p. m.; that Samuels was insolvent.

The cause was tried by the court without the intervention of a jury.

Plaintiffs asked the following instructions, which were given:

1. A sale of property made on Saturday, the seventh day of the week, by and between Jews adherent to the Jewish religion, is not in violation of the laws of the State of Missouri, and is not, therefore, null and void.

2. There can be no fraud committed by a debtor as against his creditors in the disposition of property not subject to execution and attachment.

4. A sale made by a vendor of goods and chattels in his possession or under his control, and where the same is accompanied by delivery in a reasonable time, regard being had to the situation of the property, and followed by actual and continued change of possession of the property sold, is valid as against the creditors of the vendor.

5. If the court, sitting as a jury, believe from the evidence that the taking possession of the property in controversy by the female plaintiff was open, notorious and unequivocal, such as to apprise the community and parties in charge of the property that the property had changed hands, and that the title had passed out of the seller into the purchaser, plaintiffs are allowed to recover judgment.

The following asked by the plaintiffs were refused:

3. A party attacking a sale for fraud as against creditors must show that the property sold and attached as the

property of the debtor (the vendor) was properly subject to execution and attachment, and also that the grounds set forth in the affidavit for attachment are true.

6. Under the pleadings and evidence plaintiffs are entitled to recover.

The following declaration of law was made by the court at defendant's request : The court sitting as a jury declares the law to be, that defendant, upon the pleadings and evidence herein, is entitled to recover from plaintiffs and their sureties, upon their bond given herein under the provisions of section 3, chapter 166 of the General Statutes of Missouri, the value of the property taken out of his possession herein, with his damages and costs in this behalf sustained.

The four instructions given for plaintiffs were more favorable to plaintiffs than they were entitled to. The 1. FRAUDULENT fourth and fifth might each have been ob-
CONVEYANCES. jected to by defendant. They both recognize the erroneous doctrine that if a valuable consideration is paid for the goods by the purchaser, and he takes possession of them in a reasonable time, regard being had to their situation, and such possession is of a character to apprise the community of a change of ownership, the sale is necessarily good against creditors. They ignore a question involved in this case on which evidence was adduced, viz : the participation of the purchasers in the fraud intended against creditors by the vendor. No matter what price was paid, or how early after the sale possession was taken, or how notorious such change of possession, if the vendor sold in order to defraud his creditors, and the vendee purchased in order to aid him in the perpetration of such fraud, the sale is no more valid against such creditors than if no consideration passed between them.

The instruction refused, No. three, was properly refused. It is not the case of a levy by the sheriff upon

*2 ———. attach-ment: exemp-tion: burden of proof.* goods of defendant, of which the defendant in the execution or attachment claims an exemption, but it is a claim set up by a third party, who bases his right of property upon such exemption, and the court correctly held that in such cases the burden of proof was on such party.

The sixth refused was also properly refused, because there was ample evidence to warrant a verdict for defendant. Judson's testimony shows that Samuels intended a fraud, and Mrs. Stone testifies that Samuels was her son-in-law, and that she knew he was having some trouble in his money matters, but she says it was not her business to understand his money matters. The sale was made Saturday in the afternoon. No person present witnessed the sale. A bill of sale was taken by her. Early Monday morning she and Samuels went to the stable where Samuels kept the mare to have a formal delivery of the property, and she was not satisfied until the livery keeper agreed to keep the mare for her. These precautions to keep down suspicion, so far from effecting the object in view, lead to the conclusion that, aware of the insolvent condition of Samuels, his mother-in-law and he were endeavoring to make evidence to sustain the *bona fides* of a sale that was in fact fraudulent and void.

The newly discovered evidence on which a motion for new trial was based, was cumulative and trivial. Joseph *3. NEWLY DISCOV-ERED EVIDENCE.* Farrell would have testified that on Sunday, the day after the sale, Samuels went to the stable and told him and others that he had sold the property to his mother-in-law. Nison Stone would have testified that at his wife's request, he paid Samuels $350 for the property; that he was in attendance until noon the day the cause was tried, and that in the afternoon he was sick and unable to leave his bed. And Samuels would have testified that the property was exempt from execution or attachment. The fact, if true, that the property was exempt from attachment, could equally as well have been

proved by other witnesses. Whether the mare was exempt or not, depended upon what other horses he possessed, and the other property was not exempt except at the election of Samuels to take it in lieu of property specifically exempt, and it is not alleged that no other witness was present, or could have been procured to prove the facts upon which such exemption depended. If Nison Stone's testimony was regarded as important, knowing that he would so testify, it was the duty of plaintiff to apply for a continuance if he was so sick that he could not attend and testify. It is not even alleged that when in attendance he was there to testify. Farrell's testimony could not have possibly varied the verdict; and it is strange that no other effort was made at the stable to ascertain such facts in the knowledge of the proprietors and employes, as would have tended to show the *bona fides* of the sale.

The declaration of law made by the court at defendant's instance, is complained of. If the issues of fact had 4. PRACTICE: in- been tried by a jury the instruction would structions. have been erroneous in taking the case from them by the court, but the issues of fact were submitted to the court, and the instruction announced no more than the verdict found, and cannot be said either to have misled the court or to have withdrawn from its consideration any testimony adduced on the trial. If the law and the evidence warranted the verdict, then this instruction simply declared that the court should do what it ought to have done without any such declaration of its duty. The declaration does not indicate that the court applied any erroneous principle of law to the case. The instructions given for plaintiffs show the theory of the law upon which the court proceeded. " Where the case is submitted to the court for hearing, declarations of law are generally of but little use, except to show the theory on which the case was tried." *Cooper v. Ord*, 60 Mo. 431.

All concurring, the judgment is affirmed.