MOSELY v. REILY, *Appellant*.

Division One, December 22, 1894.

1. Delinquent Taxes: NOTICE BY PUBLICATION: EJECTMENT. Notice by publication to "C. T. Clements" of suit to sell for taxes land recorded in the name of "Charles T. Clements" is sufficient to support a judgment by default, and a sheriff's deed thereunder, against a collateral attack in ejectment by the holder of a deed of later date.

2. ——. Statutory suits for delinquent taxes are directed solely against the property charged with the taxes, and personal judgment against the owner is unauthorized, although he is personally served with process.

*Appeal from Oregon Circuit Court.*—HON. W. N. EVANS, Judge.

REVERSED.

*Olden & Orr* for appellant.

(1) The putting of the sheriff's deed on record did not place the defendant in the actual or constructive possession, and ejectment would not lie against him. *Childers v. Schantz*, 25 S. W. Rep. 209; *Shaw v. Tracy*, 95 Mo. 531. (2) The sheriff's deed based on judgment against C. T. Clements, though by publication, was sufficient to pass the title of C. T. Clements, plaintiff's grantor. *Cruzen v. Stephens*, 123 Mo. 337; *Elting v. Gould*, 96 Mo. 535. (3) The deed from Alice E. Adams to Charles T. Clements was improperly admitted in evidence, without proof of conveyance from Elizabeth Alice Adams, the last person shown to be seized. *Duncan v. Able*, 99 Mo. 188; *Marvin v. Elliott*, 99 Mo. 616.

MACFARLANE, J.—This suit is ejectment to recover possession of the west half of the northwest quarter of section 5, township 27, range 30. The petition is in the usual form with the additional averment that defendant entered into the possession "by putting a tax deed upon record." By the answer defendant "admits that he is in possession of the premises sued for," but denies each other allegation of the petition.

On the trial plaintiff put in evidence the following deeds, "which were admitted to be in due form of law:" The first three of these deeds, commencing with a patent from the United States, vested the title in John Levering, July 1, 1860. *Fourth.* John Levering and wife to Elizabeth Alice Adams, warranty deed, dated April 30, 1873. *Fifth.* Alice E. Adams to Charles T. Clements, warranty deed, dated July 30, 1879. This deed contains this recital: "Being the same land acquired by deed April 30, 1873, from John Levering and Elizabeth Levering, his wife." *Sixth.* C. T. Clements

to J. E. Mosely, quitclaim deed, dated January 2, 1892. *Seventh.* Sheriff's deed, dated 1886, purporting to convey the interest of C. T. Clements to James Reily, based on judgment in back tax suit, the service in which was by publication against C. T. Clements. The description of these deeds is given here *verbatim*, as found in the bill of exceptions.

Defendant asked, and the court refused, to give the following declarations of law:

"The court declares that, under the pleadings and evidence, the finding should be for the defendant.

"The court declares that the sheriff's deed, purporting to convey the interest of C. T. Clements, is sufficient to pass the title of Charles T. Clements."

The judgment was for plaintiff, and defendant appealed.

I.   From the declaration of law asked by defendant, we must assume that he claimed title, and the right to the possession, under the sheriff's deed purporting to convey to him the land in question. Charles T. Clements, then, is the common source of title under which both parties claim. It would, therefore, be a useless thing to consider objections made to the deed of Alice E. Adams, and to determine whether, under the recital in the deed, she was sufficiently identified as Elizabeth Alice Adams who held the title.

II.   Both parties claim to have acquired the title of Charles T. Clements. The sheriff's deed, under which defendant claims, is prior in date and must prevail if founded upon a valid judgment. The title stood upon the record in the name of Charles T. Clements. The only service upon Clements was by publication of notice to C. T. Clements. We assume, though the fact does not appear, that Clements made no appearance to the tax suit, and that the judgment was by default. The controlling question in this case, therefore, is whether the

published notice to C. T. Clements was sufficient to shield the judgment against the land of Charles T. Clements from collateral attack.   The difficulty becomes embarrassing in view of what we conceive to be contrary rulings of this court as to the effect a service upon a party, under the initials of his given name, would have upon the judgment when brought in question collaterally.

In the case of *Martin v. Barron*, 37 Mo. 300, a foreign judgment by default against John E. Barron, the service having been upon J. E. Barron, was held good against a collateral attack.   In that case it is said by WAGNER, J., the other judges all concurring: "Granting that the writ and service were defective, and that the judgment rendered thereon was irregular, can it be impeached and declared void in this collateral manner?   Most certainly not.   In this collateral action its conformity to law can not inquired into.   If the judgment is erroneous, it should be reversed or vacated in a direct proceeding, instituted for that purpose, in the court where it was rendered."   On the contrary, in *Skelton v. Sackett*, 91 Mo. 379, a judgment by default against Quinces R. Noland upon a published notice to Q. R. Noland, was held to be absolutely void. While the first of these cases is cited in support of the last named, the two appear to us to be absolutely irreconcilable in principle.

The opinion in the latter case quotes approvingly the following from what was said in the former:  "The Christian and surname of both plaintiff and defendant should be set forth with accuracy; for, since names are the only marks and *indicia* which human kind can understand each other by, if the name be omitted or mistaken, there is a complaint against nobody.   But, when the service has been read by a wrong name, the

misnomer or want of a name is pleadable in abatement only." Citing 1 Bac. Abr. 9; 2 Black. 1120.

It appears from the authorities cited in *Martin v. Barron, supra,* to be the settled rule that a service, under the wrong Christian name, must be taken advantage of by plea in abatement, and failing to plead, the judgment thereon will not be void. In *Root v. Fellowes,* 6 Cush. 29, which was an action on a judgment against William B. Fellowes and —— Day, it is said, by METCALF, J.: "The omission of Day's Christian name, in the writ on which the judgment now in suit was recovered, was a matter which he might have pleaded in abatement. But, as he suffered judgment to go against him, without objection to the misnomer, an execution on that judgment,   *   *   * would have been valid, and might have been legally enforced."

Thus it seems that when a writ is served personally upon a party, by the proper initials of his given name, he is presumed to know that he was the person to be affected by the proceedings and judgment, and if he is not in fact the proper party he should make his objections in a timely manner in the court before which he was required to appear.

The object of all process, whether by personal notice or by publication, is to give the person to be affected by the judgment sought, notice thereof and an opportunity to defend. Notice by publication, though only allowable from necessity, is, when authorized, as effective as personal service. Every one is presumed to have had opportunity to read these publications, and to learn from them the nature and objects of the proceedings of which they give notice. They are generally allowable in this state only in proceedings in which property is to be affected. When in such suits the surname and proper initials of the given name, as

used by the party himself, together with the description of the property against which the proceedings are directed, are correctly given, the identity of the party intended can be as certainly ascertained as in case of personal service of process, under an improper Christian name, and the same reason that would require one to plead in abatement would require the other also.

Most persons do business, and are known in business, under names merely giving the initials of their Christian names. Deeds, bonds, bills, notes, checks and contracts are signed in that manner. Suits are prosecuted and judgments rendered daily in favor of, and against, persons in which the initials of the Christian names only are used. Such deeds are read in evidence and *prima facie* identify the party to them though the title he conveyed stood upon the record in the proper name. A notice to a party under a name he himself uses would certainly bind him.

As has been said, the object of the publication is to give notice of the proceeding to the real person who is interested. The name is only used to identify such person and may be the only means of identification. But if the name as used is the same as the party himself uses, and under which he is known, and the facts recited in the notice sufficiently identify the person intended, and advise him that his property is brought before the courts, we think that would be sufficient to give the court jurisdiction to render the judgment.

In *Elting v. Gould*, 96 Mo. 541, the publication in a tax suit addressed to R. O. Elting was held to be sufficient to give notice to Richard O. Elting, the owner of the land, the title standing upon the record in the name of R. O. Elting.

In *Cruzen v. Stephens*, 123 Mo. 337, service of process by publication addressed to "Etta R. Fisher

and —— Fisher, her husband,'' was held valid as against a collateral attack. It was also held in that case that notice by publication in a tax suit is sufficient under the Missouri statutes, when it names the defendants so as to clearly indicate their identity. See, also, the following cases as showing that recitals in the notice may be used as aids in the identification of the party notified. *Fanning v. Krapfl*, 68 Iowa, 244; *Waltz v. Borroway*, 25 Ind. 380; *Porter v. Stout*, 73 Ind. 3.

Tax suits under the statutes of this state are peculiar in that they are directed solely against the property charged with the taxes. No personal judgment against the owner is authorized, though personally served with process. Every land owner is presumed to know that his land is subject to taxation, and, if such is the case, that the tax is delinquent and the property itself is chargeable therewith. He is also presumed to be giving some attention to the property. When, therefore, he reads a published notice addressed to him by proper initials of his Christian name, describing the land, and informing him that the taxes thereon are delinquent, we think his identity sufficiently indicated to require him to plead to the action, or be estopped to question the validity of a judgment thereon, when raised collaterally. Indeed, in this case, the deed under which plaintiff claims was executed by C. T. Clements, the name by which he knew himself, being the same under which he was notified. We think the judgment and deed sufficient to pass to the defendant the title of Charles T. Clements. Judgment reversed. All concur.