N. F. RIFFLE, Respondent, v. OZARK LAND & LUMBER COMPANY, Appellant.

**St. Louis Court of Appeals, March 1, 1902.**

**Tax Suit:** RECORD OWNER: SERVICE IN TAX SUIT MUST BE IN FULL CHRISTIAN NAME OF RECORD OWNER. In action against non-residents of the State to recover back taxes on lands, a record owner whose name is Hudson L. Downs must be sued and notified by his full Christian name, and not by the name of H. L. Downs (in order for a valid judgment to be rendered against the record owner. (Turner v. Gregory, 151 Mo. 100). BLAND, J., dissents on the ground that the majority opinion is in conflict with the decisions of the Supreme Court in the case of Mosely v. Riley, 126 Mo. 124.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND TRANSFERRED TO THE SUPREME COURT.

*Botsford, Deatherage & Young* and *W. J. Orr* for appellant.

The deed from John A. Rice and wife to "Ames Iron Works" was void for uncertainty and indefiniteness of the grantee and was not admissible in evidence. Its admission was error. In this connection we refer to the opinion of this court in this case on the former appeal. Riffel v. Ozark Land & Lumber Company, 81 Mo. App. 177. See, also, the following authorities: Arthur v. Weston, 22 Mo. 378; Lumber

Company v. Oliver, 65 Mo. App. 435; Jackson v. Corie, 8 Johns. 385-388; Hornbeck v. Westbrook, 9 Johns. 73; Harriman v. Southern, 16 Ind. 190; German Land Ass'n v. Scholler, 10 Minn. 265; 5 Am. and Eng. Ency. of Law, 432.

*A. H. Livingston* for respondent.

The rule on this question is aptly stated by an able and lucid author, as follows: "Sometimes an absolute deed, and oftener a mortgage, is made to a firm by its firm name. Indeed, the latter conveyances are habitually drawn in this way. The grantee takes such a form as 'John Brown & Co.,' 'Brown Bros.,' or 'Brown, Smith & Co.,' that is, the full names of some partners are not given. Some partners are not named at all. By changes in the firm it may happen that none of them is named even by his surname. In equity the land conveyed belongs to the firm for partnership purposes, but how does the legal titles stand? The weight of authority sustains the position that, if the firm name contains the full name of a partner, or even the surnames of one or more partners who can be identified, the title would vest in such full-named party, or in the parties partially named and otherwise identified, but not in those indicated only by the words, '& Co.'" 1 Dembitz on Land Titles, sec. 47, p. 335. This position is fully sustained by the latest and best considered authorities. Devlin on Deeds, sec. 209; Cole v. Metter (Ark.), 67 Am. St. Rep. 945; Menage v. Burk (Minn.), 19 Am. St. Rep. 235; Winter v. Mott (Cal.), 89 Am. Dec. 57; Blanchard v. Floyd, 93 Ala. 53; Sherry v. Gilmore, 58 Wis. 324.

GOODE, J.—Plaintiff instituted this action to recover the value of certain timber alleged to have been cut and removed from her land by the employees of two corporations which consolidated under the name of the defendant company.

In the respondent's chain of title to the land from which

the timber was taken are two tax deeds purporting to convey the interests of H. L. Downs, who is the common source of title as to one tract involved in the controversy, and G. W. Johnson, the common source of title as to the other tract.

Only constructive service, if any service at all, was had on said defendants Downs and Johnson in the tax suits. The record title to the land at the time the actions for back taxes were instituted, stood in the full names of the aforesaid individuals, to-wit, Hudson L. Downs and George W. Johnson, but the suits were against them by their initials and thus, too, they were designated in the orders of publication. It is claimed the judgments against them under such circumstances were void, because, to obtain valid judgments, they must have been sued and notified by their full first names. The law on this subject is not well settled and we have been much embarrassed by the state of the decisions.

In a general review of the previous cases it was ruled by the Supreme Court in Mosely v. Reily, 126 Mo. 124, that a judgment for taxes based on a petition and order of publication against a defendant by his initials was good, and that a sale of the land pursuant to said judgment passed the title. That precedent would undoubtedly control the determination of the present case but for the fact that it was not followed in the later decision of Turner v. Gregory, 151 Mo. 100.

In the first case the defendant was sued by the name of C. T. Clements, his full name being Charles T. Clements, and the record title standing in his full name at the time the suit was begun. In the other case, the record title stood in the name of Singleton V. Turner, who was a resident of California when sued, to which State he had removed from Johnson county, Missouri, where the land was located. At his Missouri home he was called Vaughn Turner and ordinarily signed his name S. V. Turner. The action for back taxes was brought against him by the name of Vaughn Turner and he was notified by that name. The constructive service was held

bad and the judgment void, in an opinion which lays much stress on the necessity of suing and notifying a non-resident defendant by his full first name instead of his initials, in order to confer jurisdiction.

To the same effect is Skelton v. Sackett, 91 Mo. 377, in which it was held that an order of publication to Q. R. Noland was insufficient to give jurisdiction of Quinces R. Noland in a tax case, where the record title was in Quinces R. Nolard. The last case was commented on in Mosely v. Reily, supra, contrasted with Martin v. Barron, 37 Mo. 300, as being directly in conflict with the latter case and disregarded as an authority. It appears, however, that Barron was actually served, though only by his initials, which distinguishes it from the class of cases we are considering. The argument on which the service was held good in Mosely v. Reily is that the object of an order of publication is to give notice of a suit when personal service can not be obtained, and that when the surname and proper initials of the defendant are given, together with a correct description of the property against which the proceeding is directed, the identity of the party can be as easily ascertained "as in case of personal service of process under an improper Christian name," and that as the judgment on service of the latter kind, that is, personal service on a defendant by a wrong Christian name, is effective unless the party appears and pleads in abatement, so also ought constructive service by notifying the defendant by his initials, to be effective. It was said further, that as persons generally used their initials in business in making deeds, bonds, bills, notes, checks and other contracts, they constitute a sufficient means by which to identify the individual intended.

In Cruzen v. Stephens, 123 Mo. 337, service of process by publication against the defendant, whose Christian name was not given at all, nor his initials, was ruled good against collateral attack. That case has been overruled, but on another point.

In Nolan v. Taylor, 131 Mo. 224, the suit for taxes was against Jeff M. Thompson, but the land stood in the name of M. Jeff Thompson. The judgment was upheld because the defendant adopted and used the name of Jeff in entering the land.

It will be seen that the only precedents which are absolutely identical with the case under consideration in their facts are Skelton v. Sackett, and Mosely v. Reily, supra, and those two reach exactly opposite conclusions, the judgment being held good in one and bad in the other.

In Turner v. Gregory, supra, and Corrigan v. Schmidt, 126 Mo. 304, neither the first name nor the initials of the defendant was or were used in the publication, but the middle name, which is none at all in law. But the proposition unmistakably affirmed in Turner v. Gregory is that in actions against non-residents of the State to recover back taxes on lands, the record owner must be sued and notified by his full Christian name, if the title stands that way on the deed records of the county where the land lies, and the decision in Mosely v. Reily is only sanctioned on an altogether different ground, namely, that as both parties in that case claimed under conveyances from C. T. Clements the defendant *was estopped* from urging the defect in the tax suit.

As Turner v. Gregory is the latest deliberate expression of the Supreme Court on the point at issue, made on a careful consideration of all previous decisions, we are not at liberty to disregard it and, hence, must rule that the tax deeds relied on by the plaintiff did not pass the title of the lands to the grantee therein named under whom plaintiff claims.

Respondent urges that the doctrine of Mosely v. Reily has become a rule of property in the State and ought to be respected as such. Our answer to that argument is that when the Supreme Court sees fit, in its wisdom, to alter a rule theretofore declared, it is the duty of this court to acquiesce.

It is unnecessary to examine the other points raised, be-

cause the judgment must be reversed on the one we have considered, as plaintiff's only claim of possession of the land when the trees were cut was that she was in constructive possession as the holder of the legal title. It is so ordered. *Barclay, J.*, concurs; *Bland, P. J.*, dissents.

BLAND, P. J. (dissenting).—I withdraw my concurrence in the foregoing opinion and dissent therefrom for the reason that the opinion is opposed to the decision in the case of Mosely v. Reily, 126 Mo. 124. The opinion in that case was written by the late Judge MACFARLANE, and concurred in by all the judges of Division One of the Supreme Court. The opinion of my associates follows the later case of Turner v. Gregory, 151 Mo. 100, rendered by Division Two of the Supreme Court.

The Mosely and Turner cases are in conflict. When such a conflict of decisions exists between Divisions One and Two of the Supreme Court, I am at a loss to know which decision to follow. If the number of judges concurring in a ruling is to control, then this court should follow the Mosely rather than the Turner case. If, on the other hand, the last previous ruling of the Supreme Court is to control, we should follow the Turner case. This is what my associates have done and in so doing have followed the letter of section 6, article 6, of the Constitution. "The letter killeth, but the spirit maketh alive." 2 Cor. 3:6, quoted by SHERWOOD, J., 103 Mo. l. c. 352. We are inhibited by section 6, supra, from construing the letter or the spirit of the Constitution.

I wish to follow the lead of my superiors, but when a decision concurred in by four members of the Supreme Court leads in one direction, and another decision concurred in by the three other members of the Supreme Court leads in an opposite direction, I feel obliged to follow the majority. If I could exercise my independent judgment I would follow the Mosely case. Whether or not this case is authoritatively over-

ruled by the Turner case, I am not able to determine; seeing that four members of the Supreme Court concurred in the Mosely case and but three in the Turner case, it would seem not. Therefore, for the reason that the opinion of my associates is in conflict with the Mosely case I ask that the case be certified to the Supreme Court for its decision.

All concur in the order to transfer to the Supreme Court.