# MINOS C. VINCENT v. MEANS et al., Appellants.

### Division Two, November 22, 1904.

1. **EJECTMENT: Court Sitting as Jury: Peremptory Instruction for Plaintiff.** Where there is substantial evidence tending to show that defendant in ejectment has acquired title to the land by deed from plaintiff, a peremptory declaration of law given by the court sitting as a jury, to the effect that the finding and judgment must be for plaintiff, is erroneous. Such a declaration is analogous to an instruction to a jury to disregard the evidence. In this case there was controverted evidence tending to show that plaintiff had conveyed the land by warranty deed to defendant's grantor, and it is held that the consideration of this evidence was denied to defendant by the declaration given.

2. **SUMMONS BY PUBLICATION: Recitals in Judgment: Collateral Attack.** Where the record shows that there was an order of publication issued by the clerk in vacation, directed to the defendant, and that it was published according to law, and the judgment recites that the defendant was notified of the commencement of this suit by publication, and the record does not show to the contrary, the judgment is not subject to collateral attack on the ground that only the printer's proof of the published notice was read in evidence.

3. **NAME OF DEFENDANT: Initials Alone: Judgment.** A judgment against M. C. Vincent, in pursuance to a notice by publication directed to M. C. Vincent, is void as against Minos C. Vincent, there being no evidence to show that the defendant had ever received deeds to land or conveyed land in the name of M. C. Vincent. As a rule the first or Christian name of both plaintiff and defendant should be set forth in full in all judicial proceedings, the initials being no part of the name.

Appeal from Putnam Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED AND REMANDED.

*Wilson & Clapp* and *N. A. Franklin* for appellants.

(1) Where a case is tried by the court sitting as a jury, and there is evidence given by both parties on

the issues, it is error to give a peremptory instruction that upon the evidence the plaintiff is entitled to recover. DeGraw v. Prior, 53 Mo. 313; Butler Co. v. Bank, 143 Mo. 23. In determining the propriety of a peremptory instruction it is immaterial whether the case is tried by the court or by a jury. Lumber Co. v. Christophel, 62 Mo. App. 98. The first declaration of law given for the plaintiff is manifestly erroneous. It takes the whole case from the jury, or from the court sitting as a jury, and declares as a matter of law, without weighing the evidence, that the plaintiff is entitled to recover. Young v. Webb City, 150 Mo. 333; Bank v. Simpson, 152 Mo. 638; Pauck v. Dressed Beef Co., 159 Mo. 467; Dorsey v. Railroad, 83 Mo. App. 528; Steube v. I. & F. Co., 86 Mo. App. 640. (2) The judgment rendered in 1896 in the suit to quiet title is a valid and subsisting judgment, is not subject to collateral attack, and bars the plaintiff from maintaining the present action. Sec. 6770, R. S. 1889; sec. 2095, R. S. 1889; Laws 1891, p. 71; sec. 2022, R. S. 1889; Mosely v. Reily, 126 Mo. 124. The suit to quiet title was brought under the provisions of section 2095, Revised Statutes 1889, as amended by the act of 1891, p. 71 and sec. 6770, R. S. 1889. The former section provides that in such a suit it shall not be necessary to make any person a party defendant except such person as may appear to have of record a title adverse to that of plaintiff. It further provides that in any action brought under its provisions service of process may be had as provided in article 4 of that chapter. Such service is provided for in section 2022, Revised Statutes 1889, and is the ordinary method of service on non-residents by publication. The reasoning in Mosely v. Reily, 126 Mo. 128, is clear and cogent and cannot be successfully attacked. It is there said that "if the name as used is the same as the party himself uses, and under which he is known, and the

facts recited in the notice sufficiently identify the person intended and advise him that his property is brought before the courts, that would be sufficient to give the court jurisdiction to render the judgment.'' Plaintiff himself swears that he usually signed his name M. C. Vincent. He always so signed hotel registers, and always signed the letters he wrote M. C. Vincent, except those written to his relatives.

*John C. McKinley* and *Higbee & Mills* for respondent.

(1) There was no error in giving plaintiff's first declaration. There was no evidence that would have justified a verdict for the defendants if this case had been submitted to a jury. It is a well-established rule in this court that where it appears from the evidence that if a verdict were given for a certain party it would be the duty of the trial court to set it aside, then it becomes the plain duty of the court to direct a verdict for the opposite party. Oglesby v. Railroad, 76 S. W. 627; State to use v. O'Neill, 151 Mo. 89; Commissioners v. Clark, 94 U. S. 284, approved in Powell v. Railroad, 76 Mo. 84; Hite v. Railroad, 130 Mo. 140; Morgan v. Durfee, 69 Mo. 476. It is substantial evidence that will take a case to the jury. Haven v. Railroad, 155 Mo. 230; 2 Thompson on Trials, sec. 2248-2250; 1 Blashfield on Instructions, sec. 5, p. 9, n. 20. (2) There is a manifest distinction between instructions to a jury and declarations of law by the court. If there was evidence to support the finding, and the law applicable to the facts was correctly declared, it is not important to inquire whether any particular instruction ought or ought not to have been given. Cook v. Farrah, 105 Mo. 508; Stone v. Spencer, 77 Mo. 361. The so-called proceeding to quiet title was *coram non judice*. (a) The name of the record owner of the land

as shown by the plat book of entries and by the patents was Minos C. Vincent. The proceeding was against M. C. Vincent. This was fatal even if the proceedings had been regular in other respects. Monroe Cattle Co. v. Becker, 147 U. S. 58, s. c., 37 Law Ed. 77. The statute requires the proceeding to be against the record owner, and that means his name as it appears of record. The name of the non-resident owner must be correctly published. Constructive service confers jurisdiction only where the law has been strictly complied with. Skelton v. Sackett, 91 Mo. 377. Turner v. Gregory, 151 Mo. 104, where Skelton v. Sackett, 91 Mo. 377, is affirmed, is a case precisely in point, and distinguishes Mosely v. Reily, 126 Mo. 124, relied on by appellants, of which it is said: "That case was decided correctly upon the principle of estoppel." Riffle v. Lumber Co., 93 Mo. App. 45. Plaintiff, not having been named and named correctly in the pretended order of publication, the substituted service of process is as void as if a blank had been left where his initials were inserted. Troyer v. Wood, 96 Mo. 481; Chamberlain v. Blodgett, 96 Mo. 483; Burge v. Burge, 94 Mo. App. 21. That plaintiff learned in March, 1897, of the entry of this judgment, will not avail to alter its complexion. "A person may know that an action is pending against him, and he may know that notice by an order of publication was intended for him, yet such knowledge will not supply the place of a proper order published with substantial correctness. In other words, knowledge in such cases, will not supply notice." Green v. Meyers, 98 Mo. App. 443; Wilson v. Railroad, 108 Mo. 596; Harness v. Cravens, 126 Mo. 252; Young v. Downey, 150 Mo. 326; Parker v. Burton, 72 S. W. 663; Feurt v. Caster, 174 Mo. 303; Tooker v. Leake, 146 Mo. 430. (b) The so-called order of publication does not recite an order of publication; it is meaningless. (c) It shows that the original order of publication, if there was one, was neither signed by the clerk, nor attested by the seal of the court. (d) It

shows that the copy published was not attested by the seal of the court. (e) It is not directed, that is, addressed to any one. 20 Ency. Pl. and Prac., 1138, note 2; Porter v. Hill County (Texas), 33 S. W. 383; Steele v. Murry, 80 Iowa 336, 45 N. W. 1030.

FOX, J.—This is an action of ejectment for the possession of the southwest quarter of section ten, township sixty-five, range nineteen, in Putnam county. The petition is in the usual form in such case. Hugh D. Marshall, who was originally made a codefendant, by answer disclaimed any title or interest in the land, and the case was thereafter dismissed as to him. The other defendants, Means and Clapp, filed answer in which they admit the possession of the land, but deny all other allegations in the petition.

The trial was by the court, a jury being waived, and resulted in a judgment for plaintiff for the possession of the land and one hundred dollars damages. After unsuccessful motions for new trial and in arrest, defendants appeal.

Plaintiff read in evidence a *certified copy* of a patent to the south half of the southwest quarter of said section ten from the government of the United States to Minos C. Vincent, dated September 10, 1859.

Plaintiff next read in evidence a certified copy of a patent to the north half of the southwest quarter of said section ten from the government of the United States v. Minos C. Vincent, dated September 10, 1859.

Plaintiff then introduced evidence as to the rents and profits of the land and rested.

Upon the part of defendants it appeared that A. B. Vincent claimed to own the land, from the fall of 1867, and that during that fall he wrote to the collector of Putnam county wanting to know what the taxes were on this land for that year, claiming to be the owner. His letter was handed by the collector to Mr. Marshall, who was then county clerk, to answer. Mr. Marshall did

so, writing A. B. Vincent that on examination he had found the land on the forfeited list of 1862; and informing him that under the law when land had been forfeited to the State it was not again taxed until redeemed or sold, and advising Mr. Vincent what amount he would have to pay to redeem his land.

In 1881 B. H. Bonfoey, of Unionville, was employed by the Chicago, Burlington & Kansas City Railroad Company to secure for it a right-of-way through Putnam county. Mr. Bonfoey, having ascertained in some way (not disclosed) that A. B. Vincent was the owner of this quarter section, entered into a correspondence with him, extending over a period of about a year, trying to obtain from Mr. Vincent the right-of-way through the land without suit. But failing in this, Bonfoey instituted condemnation proceedings alleging A. B. Vincent to be the owner, and on the seventh day of September, 1882, judgment was rendered against Mr. Vincent in the Putnam circuit court condemning a right-of-way through the land. The money due Mr. Vincent was paid at the time to the circuit clerk, and in 1884 was received by Mr. Vincent.

After the patents to the land were issued they were delivered to A. B. Vincent, a brother of the plaintiff, who turned them over to H. D. Marshall in 1884, when he claimed to have bought the land from his brother, and to have had a deed to it from him, and at his request Marshall took possession of the land, fenced it for him, the contract being the fencing in a general way, and the payment of the taxes upon it for five years. Marshall, as the agent of A. B. Vincent, after his lease was out in March, 1889, sold the land to the defendant Means for six dollars and twenty-five cents per acre. The money was paid by Means to Marshall, or placed in the bank at Unionville, to be drawn by Marshall when he wanted to pay for the land, except two hundred and forty or fifty dollars, which Marshall loaned Means. Of this two hundred and forty or fifty

dollars Marshall sent two hundred of it to A. B. Vincent and retained the balance for his commissions. A. B. Vincent received the money and in March, 1891, made Means a deed for the land. Means took possession of the land in March, 1889, under his contract of purchase, and has held possession of it ever since.

It seems that as part of the purchase-money for the land, Means and Marshall executed to A. B. Vincent their note for $800, which became due in March, 1896.

In September, 1894, the plaintiff for the first time appeared in Unionville. He hunted up Judge Z. T. Brawford, then postmaster, and had him go with him to the recorder's office and introduce him. Vincent examined the records, and found that his brother had made a warranty deed for the land of Means, and that the Means note for $800 would fall due in March, 1896. He claimed to own the land himself and expressed a desire to see Mr. Marshall. Vincent found Marshall at the depot. Vincent claimed that he was the owner of the land. He expressed great surprise at his brother's acts and conduct. He denounced his brother as a liar, a scoundrel and an embezzler. He further stated that he had been at the recorder's office and found out that the note Means had given his brother for the balance of the purchase-price would mature in March, 1896. He said that his brother would probably come to Unionville then, and that he would come back too, meet his brother and get the money himself. He said further to Marshall that his brother had been merely his agent all this time to look after the land, and yet in a letter written to Marshall in January, 1896, he told him that he had not had a line or a word from his brother for more than a dozen years, although his brother was owing him upwards of $20,000, for money loaned, and that his brother had designedly and continuously kept his whereabouts an entire secret from him.

When Means learned that the plaintiff had been at Unionville and was claiming the land, he discontinued

paying any more interest on his note given to A. B..
Vincent.·

However, shortly before the note fell due Means
deposited the full amount of the note principal and in--
terest in Marshall's bank at Unionville, and with it.
filed a claim for damages. Mr. Marshall at once noti-
fied A. B. Vincent of this. On the day the note ma-
tured it was paid off, but the money was held by the⸴
bank to await the adjustment of Means' claim.

"By this time the plaintiff had arrived in Union-
ville, and although Mr. Marshall had been authorized⸴
by A. B. Vincent to compromise for him the claim of
Means, and to pay his brother, the plaintiff, whatever·
was coming to him, still he preferred not to compromise⸴
with Means until he had first seen Mr. M. C. Vincent.
The plaintiff remained in Unionville this time for sev--
eral days, and during his stay Mr. Marshall had several
long talks with him. The matter finally narrowed down⸴
to two propositions. The one was that plaintiff should·
pay Means $632 and Means make him a deed to the
land; the other was that Means should pay the plaintiff
$340 or $360 (Mr. Marshall is uncertain as to the exact
amount) and the plaintiff make Means a quitclaim to⸴
the land, Means wanting a deed, as there was a break:
in the record title, the deed from M. C. Vincent to A..
B. Vincent never having been recorded. During one
of these conversations Mr. Marshall told Mr. Vincent,
that when his brother had made the warranty deed to⸴
Means, he had turned over to him for Means the orig--
inal certificates of entry; that these certificates had been
given by him to Means and had been left by Means\at
the bank, and that he, Marshall, would step over to the,
bank and get them, whereupon the plaintiff exclaimed
*that if his brother had done that he must have sold him⸴
the land.* He then stated to Mr. Marshall, *that it·
might be that he had made his brother a deed for it..*
He further agreed to take the second proposition, viz.,⸴

to take the $340 or $360, and make Means a quitclaim deed.

"After this settlement had been made, Mr. Marshall referred to Mr. Vincent's letter to him written in January, 1896, in which he alluded to his brother owing him $20,000. Mr. Vincent replied to this that his brother not only owed him $20,000 for money loaned but also a note for $12,000 besides, and went over to his trunk and got the note and showed it to Mr. Marshall. The note bore date somewhere in the sixties. He says he asked him for what his brother had given him the note, and *he said it was given for land he had sold his brother.*

"After the settlement had been affected Mr. Marshall remarked that he would go over to the bank and get the money, but Mr. Vincent said to just let it be for the present in the bank; that he was going out west to see his brother, and would be gone two or three weeks, when he would return and get the money. The plaintiff left his trunk, and was gone some two or three weeks, and then returned, but Mr. Marshall never saw him, nor did Mr. Vincent ever call for his money.

"In their talks leading up to the settlement Mr. Marshall mentioned that Means had been talking of bringing suit to quiet the title, and Mr. Vincent suggested that Mr. Marshall hold it over until he got back, but Marshall replied that he couldn't promise that Means wouldn't bring the suit.

"Means, however, did wait, not only till Mr. Vincent came back (about the first of April), but till the following July, and then not having heard a word from the plaintiff Means had J. E. Buchanan, an attorney at Unionville, bring a suit to quiet the title to the land.

"The suit was brought against the plaintiff by the name of M. C. Vincent to the September term, 1896, of the Putnam Circuit Court, service obtained by publication, and judgment rendered in favor of Means on September 10, 1896, vesting the title to the lands in

Means, and disbarring the defendant M. C. Vincent, the plaintiff in this case, from having or claiming any right or interest in the land adverse to Means.

"The plaintiff did, however, return to Unionville in the spring of 1897. He was there for several days and had several talks with Mr. Marshall. He wanted to know if the matter could still be settled up, and Mr. Marshall told him he supposed it could by his paying the cost and expenses of the suit to quiet the title and that he would see Means and let him know. He saw Means but found him averse to a settlement, and then saw Mr. Vincent and told him he could do nothing, that Means said he had brought suit and had the title quieted and didn't want to sell to Vincent, but that Means was still ready to pay him the sum agreed upon for a quitclaim deed.

"This plaintiff refused to do, and on the twenty-eighth day of February, 1901—ten years, lacking fourteen days, from the execution of the warranty deed from A. B. Vincent to Means—brought this action in ejectment against Means the owner, Clapp the tenant, and Mr. Marshall. The plaintiff admitted on the trial that he had agreed with Mr. Marshall in the spring of 1896 to pay him $632 for Means for which sum of money he was to receive a deed from Means and get possession of the land."

The defendants offered in evidence the petition, order and proof of publication and judgment of date September 10, 1896, of the Putnam Circuit Court, in the case of John R. Means against M. C. Vincent, a suit brought to quiet the title to this land. Also a motion for a *nunc pro tunc* entry of the finding and judgment in said cause, and the decree rendered in accordance with the prayer thereof, October 31, 1901, as of September 10, 1896. To the introduction of these several papers and judgments the plaintiff objected, but his objections were overruled and the same admitted in evidence. The court, however, in its second declaration of

law given for the plaintiff held that these judgments were no bar to plaintiff's action, and excluded them from its consideration in determining the case.

The evidence on the part of plaintiff in rebuttal tended to show that plaintiff had never sold or deeded the land to his brother, A. B. Vincent, but that he was only his agent to pay taxes upon and look after the land. Plaintiff testified as a witness in his own behalf and denied that he ever said to Marshall, after he had told him that A. B. Vincent had turned over the certificate of purchase to him, that he thought if he did that he must have sold the land to his brother.

The court, over the objection and exception of defendants, declared the law to be as follows:

1. The court declares that upon the evidence in this cause the finding of the court should be for the plaintiff against the defendant John R. Means for the possession of the lands sued for in the petition, except the right-of-way of the Chicago, Burlington & Kansas City Railroad Company over said premises.

2. The court declares that the judgment of September 10, 1896, read in evidence, in the cause of John R. Means, plaintiff, against M. C. Vincent, defendant, as also the judgment *nunc pro tunc* in said cause rendered at this term, are no bar or impediment to plaintiff's action in this cause, and will be excluded from the consideration of the court in determining this cause.

3. The court declares that this action was begun on the twenty-eighth day of February, 1901, and before plaintiff's right to recover the land sued for can be barred by adverse possession, the defendants must prove by a preponderance or greater weight of evidence that the defendant Means and those under whom he claims title have had open, notorious, continuous, adverse possession for a period of ten years next before this suit was brought, under claim of ownership. Adverse possession means a possession in hostility or oppo-

sition to the title of the real owner, and implies that it commenced in wrong and in open and notorious hostility to the title of the true owner, and has been maintained ever since in open defiance of the true owner's title.

· If the court sitting as a jury find from the evidence that plaintiff entered the land in question and made arrangements with his brother, A. B. Vincent, to look after the land and pay the taxes thereon, and his brother agreed to do so, and plaintiff went away and has resided abroad, relying upon his brother to pay the taxes on said land, and about the year 1885, said A. B. Vincent leased the land in his own name to defendant Marshall without disclosing that he was acting as agent for plaintiff, and defendant Marshall fenced the land and paid taxes thereon under the terms of his lease for the use of the pasture and remained in possession of said land under said agreement, until March, 1891, when said A. B. Vincent sold and conveyed said land to defendant Means, then you are instructed the relation of said A. B. Vincent to plaintiff was that of agent, and the possession of defendant Marshall was not under claim of ownership either in himself or of A. B. Vincent, but was consistent with and not in opposition to nor adverse to plaintiff's title and ownership; in other words, the law presumes that Marshall's possession up to the time A. B. Vincent conveyed said land to Means in March, 1901, was in law and in fact plaintiff's possession, and this possession could not be changed to an adverse possession by any intent on the part of A. B. Vincent not disclosed to plaintiff. Before this presumption of the law can be overthrown, defendant Means must show by the preponderance or greater weight of the evidence that actual notice was brought home to plaintiff ten years before this suit was brought, that A. B. Vincent claimed to be the actual owner of said land, and had repudiated the relation of agent for plaintiff as to said land, and that plaintiff had

notice thereof more than ten years before this suit was brought, and unless the court so finds the verdict will be for plaintiff.

The defendant prayed the court to declare the law as follows:

1. The court declares the law to be that under the evidence in this case the plaintiff cannot recover, and the finding and judgment of the court must be for the defendants.

2. If the court finds from the evidence that A. B. Vincent, plaintiff's brother, represented to H. D. Marshall that he was the owner of the land in suit under a deed from his brother, the plaintiff, and that relying thereon Marshall, as A. B. Vincent's agent, sold the land to Means in the year 1889, and that the defendant Means went into the exclusive possession thereof during said year 1889; that said land was fenced and that the defendant Means pastured his cattle thereon, and exercised other acts of ownership thereover, and that in the year 1891, the said A. B. Vincent executed and delivered to the said Means a deed for said land, and that from the year 1889 on down to the time of the bringing of this suit, the defendant Means and those claiming under him have been in the open, notorious, exclusive, continuous and adverse possession thereof, then the finding and judgment of the court must be for the defendants.

3. If the court finds that in the year 1894 the plaintiff had personal knowledge that the defendant Means was in the actual possession of the land in controversy, claiming the same under a deed from plaintiff's brother, A. B. Vincent, and that in the year 1896, suit was brought by the defendant Means in this court against the plaintiff in this suit by the name of M. C. Vincent to quiet the title to said land under the provisions of section 6770, Revised Statutes 1889; that service was obtained in said suit by publication against M. C. Vincent; that said M. C. Vincent did not appear to said

action and final judgment quieting title to said land was rendered against him in said court at its September term, 1896, and that thereafter, in the summer of 1897, this plaintiff heard and personally knew that said suit had been brought against him by the name of M. C. Vincent to quiet the title to said land, and that judgment had been rendered therein, against him as aforesaid; and that the plaintiff at no time within three years after the rendition of said judgment, to-wit, September 10, 1896, took any steps toward setting the judgment aside by filing a petition for review, then the finding and judgment of the court must be for the defendants.

4.  If the court finds from the evidence that the plaintiff has made it his habit for many years in his written correspondence with strangers to sign his Christian name by his initials, thus, M. C. Vincent; and that in said suit brought by the defendant Means against this plaintiff to quiet the title to said land the plaintiff was sued as M. C. Vincent; that in said suit an order of publication was issued by the clerk of this court and publication made in due form of law against M. C. Vincent; that judgment was regularly rendered in said suit in 1896 against M. C. Vincent; and that from said judgment no appeal was ever taken or writ of error sued out; then the court declares as a matter of law that said judgment is a valid and binding judgment against this plaintiff, and that the same cannot be collaterally attacked in this point.

All the declarations of law asked by defendants were refused, and they duly excepted.

The first point presented for consideration upon this appeal is with respect to the action of the court in giving declaration of law numbered one at the instance of plaintiff. It is a peremptory declaration that the finding and judgment should be for plaintiff for the possession of the land, notwithstanding the fact that there was substantial evidence tending to show that

A. B. Vincent had acquired the title to the land by deed from the plaintiff long before the sale and conveyance of the land by A. B. Vincent and wife to the defendant Means.

That such a declaration is erroneous even where the court sits as a jury, or when the case is being tried before a jury, seems to be well settled. [DeGraw v. Prior, 53 Mo. 313; Lumber Co. v. Christophel, 62 Mo. App. 98.]

In speaking of a similar instruction in Ford v. Dyer, 148 Mo. 528, there is quoted with approval the following from Wolff v. Campbell, 110 Mo. l. c. 120: "There are cases where such an instruction may properly be given; as where the plaintiff's case, under the pleadings, turns wholly on the construction of a contract, the construction of which is simply a question of law; or where the answer admits the plaintiff's cause of action and sets up new matter as a defense, and the evidence fails to make out a prima facie defense. Ordinarily, where the plaintiff produces parol evidence to support his action, the issue of fact should be submitted to the jury. . . . The court has no right to tell the jury they must believe the witnesses." [See, also, Bryan v. Wear, 4 Mo. 106; Vaulx v. Campbell, 8 Mo. 224; Gregory v. Chambers, 78 Mo. 294.]

So in Huston v. Tyler, 140 Mo. 252, Sherwood, J., in speaking for the court, said:

"In addition to the reasons above given, showing that error occurred during the trial of the case at bar, may be instanced the fact that the trial court gave a peremptory instruction to the jury to find for plaintiff. Such an instruction would have been erroneous even had there been no conflict in the testimony. This has been the uniform rule in this State since Bryan v. Wear, 4 Mo. 106; Vaulx v. Campbell, 8 Mo. 224; Gregory v. Chambers, 78 Mo. 294; Wolff v. Campbell, 110 Mo. 114. And the reason given in the first-mentioned case was that such an instruction in effect told the jury

'they must believe the evidence.' Of course where, as here, there is conflicting evidence, the error of such an instruction on the part of plaintiff becomes of more pronounced proportions."

In Butler County v. Boatmen's Bank, 143 Mo. 13, a jury was waived, and the issue of facts submitted to the judge. There was no finding of facts by the judge, but it was held that either party had the right to have the judge declare the theory of the law by which he was governed in reaching the conclusion of fact. That this is done in form of declarations of law, which are analogous to instructions given to juries and which are subject to review by the appellate courts in like manner and with like effect. The court said: "A demurrer to the evidence in a jury trial invokes a conclusion of law, and admits all the facts the evidence tends to prove and every inference that can be reasonably and logically drawn from the evidence. The declaration of law given at the request of defendant must be treated as in the nature of a demurrer to the evidence, and not as a conclusion of fact drawn from conflicting evidence."

While the statement of A. B. Vincent that his brother had made him a deed to the land in question was denied, that is, the fact that such a deed was made was denied by both of them upon the witness stand, there were statements and acts by both of them in evidence which tended to show that such a deed had been made, and that A. B. Vincent claimed the land as far back as 1867. When part of the land was condemned for right-of-way for railroad purposes he was made party defendant, and received the damages assessed against the railroad company for the right-of-way. In 1867 he wrote to the collector of Putnam county in regard to the taxes on the land, claiming to be the owner. In 1883 he stated that he owned the land and wanted to sell it. It was in evidence that plaintiff had stated in 1894, while in Unionville, that he had been at the recorder's office and found out that the note Means had

given his brother for the balance of the purchase price would mature in March, 1896; that his brother A. B. Vincent would probably be there then; and that he would come back to meet him and get the money himself. A. B. Vincent had possession of the original patents to the land, and when Marshall told plaintiff his brother had turned over the certificates of purchase to the land to him or Means, plaintiff replied, "If he did that, he must have sold the land to his brother as his brother claimed."

A. B. Vincent in 1884 took actual possession of the land and leased it in his own name for five years.

That these facts, although some of them were controverted by plaintiff and his brother, tend to show that plaintiff had conveyed the land by deed to his brother, A. B. Vincent, before the latter and his wife conveyed it by warranty deed to defendant Means, is too clear for argument, and for the purpose of the declaration of law under consideration must be considered as true, as well as every fair inference to be drawn therefrom, but the right to have these matters considered by the court in passing upon the case was denied defendants by that declaration, and therefore said declaration was erroneous.

A final contention is that the judgment rendered September 10, 1896, in the suit by Means against M. C. Vincent, is a valid and subsisting judgment, is not subject to collateral attack, and bars the right of plaintiff, Minos C. Vincent, from maintaining this action.

The suit was to quiet title and was brought under the provisions of section 2095, Revised Statutes 1889, as amended by the act of 1891 (Laws 1891, p. 71), and section 6770, Revised Statutes 1889. The former section provides that in such a suit it shall not be necessary to make any person a party defendant except such person as may appear to have of record a title adverse to that of plaintiff. It further provides that in any action brought under its provisions service of process may be

had as provided in article 4 of that chapter. Such service is provided for in section 2022, Revised Statutes 1889, and is the ordinary method of service on nonresidents by publication.

The suit was against M. C. Vincent, while the record owner of the land was Minos C. Vincent.

Plaintiff contends that the judgment of September 10, 1896, is void, for the reasons: there was no order of publication, or, if there was, none was produced, only the printer's proof was read in evidence, which shows that the original, if there was one, was neither signed by the clerk, nor attested by the seal; that the copy published was not attested; that it shows no order of publication; that it was not directed or addressed to any one, and, therefore, the publication was insufficient as a notice.

But the record does show that there was an order of publication issued by the clerk of the court in vacation, directed to the defendant, and that it was published according to law. Besides, the *nunc pro tunc* judgment recites, "Now on this tenth day of September, 1896, comes the plaintiff by his attorney, but the defendant, although having been notified of the commencement of this suit by publication made in this cause," and as the record does not show to the contrary, the judgment is not subject to collateral attack upon these grounds. [Harness v. Cravens, 126 Mo. 233.] Therefore, unless the judgment is void because it is against M. C. Vincent instead of Minos C. Vincent to whom the land was patented, it must be upheld.

As a general rule the full name, that is, the first or Christian name, of both plaintiff and defendant in all judicial proceedings should be set forth in full. "Initials are not a legal part of the name, the authorities holding the full Christian name to be essential." [Monroe Cattle Co. v. Becker, 147 U. S. 47; Turner v. Gregory, 151 Mo. 100.]

It is true there is an exception to this rule where

the party against whom judgment is rendered has received deeds to land, and conveyed land using his initial letter or letters, but there was no evidence in this case that Minos C. Vincent had ever done so.

Defendants, however, rely upon the case of Mosely v. Reily, 126 Mo. 124, as holding that the judgment in question is not void because rendered against M. C. Vincent instead of Minos C. Vincent. But in speaking of that case in Turner v. Gregory, supra, GANTT, P. J., said:

"In Mosely v. Reily, 126 Mo. 124, it will be observed the landowner had been sued by his correct initials and judgment obtained and the land sold. Subsequently by the same initials he conveyed the land to a third person who sued the purchaser at the tax sale. When Mosely, the purchaser from Clements, brought ejectment and came into court and claimed title under C. T. Clements, we think he was clearly estopped from denying the validity of a judgment against his grantor by the same name which that grantor used in conveying him the land. That case was decided correctly upon the principle of estoppel." [City Council v. King, 4 McCord 487.]

Our conclusion is the judgment is void.

The judgment is reversed and the cause remanded for further trial. All concur.