BUTLER COUNTY, *Appellant*, v. THE BOATMEN'S BANK.

Division One, February 23, 1898.

143  13
82a 356

143  13
92a 334

1. **Practice**: COURT SITTING AS A JURY. Where a jury is waived and the issues of fact submitted to the judge, his findings are as binding upon the appellate court as is the verdict of a jury. But either party has the right to have the judge declare the theory of the law by which he is governed in reaching his conclusions, and this is done by declarations of law, which are analagous to instructions to juries, and which are in like manner subject to review in this court.

2. ———: ———: DEMURRER. A declaration given on behalf of defendant to the effect "that under the pleadings and evidence in the case the plaintiff is not entitled to recover," is held to be a declaration of law, and not a finding of fact by the judge sitting as a jury. It is treated in the nature of a demurrer to the evidence in a jury trial, and admits all the facts the evidence tends to prove and every inference that can reasonably be drawn therefrom.

3. ———;. ———: TRUST FUNDS: PAYING COUNTY BONDS: DEBTOR AND CREDITOR. A county desired to take up its six per cent bonds with the money derived from a sale of new five per cent bonds. It made the county treasurer its financial agent to bear the new bonds to the defendant bank, where the old bonds were payable, and gave him a certified copy of the county court's order, which he was to deliver to the bank, directing it to deliver the new bonds to a brokerage firm which had agreed to buy the bonds at a stipulated price, and to apply the money received by it from said firm "to the payment of said six per cent bonds when presented." The treasurer as such at that time had $1,100 to his credit on deposit in said bank, and having received $30,933 from the sale of the new bonds the bank paid out $24,000 in taking up the old ones, and honored the treasurer's checks until the balance in its hands was only $4,000. The treasurer proving a defaulter, the county sued the bank for the part of the proceeds of the sale of the new bonds which it paid on the check of the treasurer, and which he applied to the payment of his official defalcation. *Held,* that as the demurrer to the evidence was sustained, it was not determined as a fact that the bank had received the copy of the court's order, and hence it could not be held that it did not receive the money under an instruction and the obligation "to apply it to the payment of the said six per cent bonds when presented," and that if it did receive such order it had misapplied the funds when it paid them out on the treasurer's check or instructions. *Held,* also, that the relation of debtor and creditor did not exist between the bank and county, but that the bank, as trustee, if it received the order, held the money as a trust fund, to be paid out only for the old bonds, and a payment of it in any other way was a breach of the trust, for which the bank was liable. *Held,* also, that the official position of the treasurer did not vest him with any authority to modify the duties of the bank or the instructions of the court.

4. ———: ———: ———: ———: ESTOPPEL: PREVIOUS DEALINGS OF TREASURER. There is nothing in the fact that the treasurer had for years deposited the county's moneys in defendant bank, and that plaintiff knew of this fact, to estop the county to deny the treasurer's authority to make the money realized from the sale of the bonds a part of the treasurer's general deposit, or to deny his authority to in anywise divert it from the purpose for which it was created.

5. Funding Bonds: NOTICE: FINANCIAL AGENT. One who deals with the financial agent of a county, in the matter of refunding bonds, is not chargeable with constructive notice of the detailed instructions given him by the records of the county court, but only with notice of such limitations on his authority as the statute imposes upon the county court, and with notice of such other limitations as he had actual knowledge of.

*Appeal from St. Louis City Circuit Court.*—Hon. Leroy B. Valliant, Judge.

Reversed and remanded.

*W. E.. Renfro, E. R. Lentz* and *T. K. Skinker* for appellant.

(1) The money arising from the sale of these bonds could not be appropriated to any other purpose than that for which the said bonds were issued, either by the county court or anyone else. R. S. 1889, sec. 835. (2) In making contracts the county court is the agent of the county, with express, limited and defined powers; and persons contracting with it must take notice of its power and authority. *Bauer v. Franklin Co.*, 51 Mo. 205; *Sturgeon v. Hampton*, 88 Mo. 203. The acts of the county court can only be proven by the records of that county. *Maupin v. Franklin Co.*, 67 Mo. 327; *Johnson Co. v. Wood*, 84 Mo. 439. (3) The defendant could not apply the said funds to any other purpose than that specified in the order of the county court. *Judy v. Bank*, 81 Mo. 404; *Inglefritz v. Bank*, 21 Mo. App. 560; *Bank v. Cooper*, 137 U. S. 473; *Cutler v. Bank*, 113 N. Y. 593; *Grissom v. Bank*, 10 S. W. Rep. 775; *Bank v. O'Hare*, 119 Ill. 646; *Sims v. U. S. Trust Co.*, 9 N. E. Rep. 605; *People v. Bank*, 96 N. Y. 32. (4) This transaction between the plaintiff county and the defendant was in the nature of a special deposit. *Bank v. O'Hare*, 119 Ill. 646; *Cutler v. Bank*, 113 N. Y. 593; *Bank v. Cooper*, 137 U. S. 473; *Bank v. Loyd*, 90 N. Y. 533; *People v. Bank*, 96 N. Y. 32; *Utley v. Tolfree*, 77 Mo. 309. (5) The understanding of the depositor as to the nature of a transaction governs, if he had the right to so understand it, and such conclusion was reasonable. *Van Leuwen v. Bank*, 54 N. Y. 671. (6) The agency of

Ferguson as agent of the county court could only be shown by the record of the county court in the order of his appointment, or a certified copy thereof, and the defendant, in dealing with him, was bound to look to that record to ascertain the limits of his authority. *Maupin v. Franklin Co.*, 67 Mo. 327; *Johnson Co. v. Wood*, 84 Mo. 439. (7) The principal of a special agent is only bound by the acts of the agent which are strictly in accordance with his authority, and a third person dealing with such agent is bound to ascertain at his peril the limits of his authority. 1 Am. and Eng. Ency. of Law, 351; *Bank v. Bank*, 16 N. Y. 125; *Craighead v. Peterson*, 72 N. Y. 279; *Delafield v. Illinois*, 26 Wend. 193; *Jackson v. Badger*, 26 N. W. Rep. 908; *Siebold v. Davis*, 25 N. W. Rep. 778; *Taft v. Baker*, 100 Mass. 68; *Dyer v. Duffey*, 24 L. R. A. 339; *Keating v. Kansas City*, 84 Mo. 419. (8) The defendant had the right, if he saw fit, to refuse to accept the trust imposed by the delivery of these bonds, but it did accept the trust by accepting the bonds and agreeing to apply the proceeds of the sale thereof to the payment of the called six per cent bonds. It must be understood as accepting them on the terms on which they were tendered by the county court. No arrangement between the bank and the agent Ferguson could change the instructions given by the plaintiff. *Baxter v. Lamant*, 60 Ill. 237; *Morris v. Watson*, 15 Minn. 212; *Funkhouser v. Ingles*, 17 Mo. App. 237.

*Boyle, Priest & Lehmann* for respondent.

(1) The petition charges that the bonds were deposited with the bank under instructions in writing to apply their proceeds exclusively to the redemption of six per cent bonds which had been called for payment,

and this allegation is not sustained as a matter of fact. (2) The bank received the bonds as a general deposit to the credit of the county and has fully accounted for their proceeds. (3) The bank was not bound as a matter of law and independently of the conditions of deposit, to itself apply the proceeds of the bonds exclusively to the redemption of the called six per cent bonds. R. S. 1889, chap. 21, art. I; Tiedeman on Com. Paper, sec. 447; *State ex rel. v. Powell*, 67 Mo. 398; *State ex rel. v. Moore*, 74 Mo. 413; *Dickinson v. Coates*, 79 Mo. 250; *Ihl v. Bank*, 26 Mo. App. 140; Morse on Banks and Banking, p. 37; *Judy v. Bank*, 81 Mo. 404.

MACFARLANE, P. J.—This is an action to recover a balance of $6,722.50 alleged to be due the county of Butler from defendant, a savings bank, on account of a special deposit therein of the sum of $30,933 cash. The petition charges in substance that on the first day of March, 1890, the plaintiff deposited with the defendant $30,000 of its new five per cent funding bonds with instructions in writing to the defendant, among other things, to deliver them to Wernse & Deickman for their face value in cash, and to apply the cash so to be received to the payment of certain six per cent bonds which were on that day said to have been due and payable at the defendant bank. The petition further says that the defendant did deliver said bonds to Wernse & Deickman and did receive therefor $30,000; and further, that the defendant has wholly failed, neglected and refused to apply the whole of said $30,000 to the payment of said six per cent bonds, and that the defendant has wholly failed, neglected and refused to account to plaintiff for the amount which it so failed to pay for said six per cent bonds, and plaintiff asks judgment for said balance. There is a second count in the petition, but no

claim is now made under it. The answer is a general denial and a plea of payment. The reply is a denial of new matter.

It appears from the evidence that on the eighth day of February, 1890, the county court of Butler county, pursuant to previous steps regularly taken, made and entered of record an order for funding some of its outstanding six per cent bonds, and for the issuance of $30,000 new bonds, bearing five per cent interest. The order, after providing for issuing, signing and registering the new bonds, appointed Martin Ferguson, county treasurer, as financial agent of the county, and gave him specific authority to enter into a contract on behalf of the county with Wernse & Deickman, of St. Louis, to furnish the $30,000 necessary to redeem the old bonds. The terms of the instructions to the said Ferguson as financial agent required him to deliver the new bonds to defendant, to be delivered by it to Wernse & Deickman "upon payment to said bank, for said county, of the par value thereof, in money or an equivalent, or any proportional amount thereof, of the old six per cent bonds, to take up and retire which these bonds are issued; the county of Butler is further to deposit in the said bank $1,000 in cash, this being the amount of accrued interest on the old bonds at the date on which they are declared to be due and payable, to wit, March 1, 1890." The order further provided that the deposit of said bonds by Ferguson should be accompanied with the following letter of instruction to defendant:

"*Cashier Boatmen's Savings Bank, St. Louis, Mo.:*

"DEAR SIR:—We hand you herewith sixty bonds of five hundred dollars each, issued by Butler county, Missouri, bearing five per cent interest; also, $1,000 cash. You will please deliver said bonds to Wernse & Deickman, or their order, in such amounts as they

may elect, in exchange for an equal amount of the six per cent bonds of the said county, described in the call hereto attached, or for their face value in cash. The $1,000 you will please use in paying the interest accrued to March 1, 1890, on the said six per cent bonds, as presented by the said Wernse & Deickman. In case of any cash being paid you, you will please apply it to the payment of the said six per cent bonds when later they are presented. Cancel the six per cent bonds as they are received, and when you have the entire $30,000 express them as valuable papers to the clerk of this county. The said Wernse & Deickman will pay you for your services.          E. C. LACKS,

"Presiding Judge of Butler County Court.

"Attest: W. B. ADAMS, County Court Clerk."

On the twenty sixth day of February, 1890, said county court made the following additional order:

"*County Compromise Bonds Signed.*

"In compliance with the order of the county court, made on the 8th day of February, A. D. 1890, which order is now complied with by the presiding judge, E. C. Lacks, and the clerk, W. B. Adams, signing sixty five per cent compromise bonds of five hundred dollars each, with thirty interest coupons thereto attached, and dated March 1, A. D. 1890, made payable March 1, 1920, or at any time after ten years, at the option of the county of Butler. And it is now ordered that the clerk of the county court of Butler county, Missouri, deliver the said bonds to the county treasurer, Martin Ferguson, and take his receipt for the same."

The bonds and a certified copy of these orders were delivered to Ferguson. On the first day of March, 1890, the bonds were delivered to the cashier of defendant bank at its place of business in St. Louis. Whether or not the orders of the county court and the

letter of instruction were delivered or shown to defendant's cashier is a disputed question. The cashier claims that neither was done. On receipt of the bonds the cashier prepared and Ferguson signed the following letter:

"POPLAR BLUFF, Mo., March, 1890.

"*Boatmen's Bank, St. Louis, Mo.*

"As will be seen from the advertisement hereto attached (cut from *Globe-Democrat,* to-day's issue) Butler County, Mo., has 'called' $30,000, of its outstanding six per cent 5-20 year 'Compromise' bonds (Nos. and denominations as per said advertisement), payable at your bank March 1st, 1890, with the interest from Oct. 1st, 1889, to said date, and it has been agreed between this county and Messrs. Wernse & Deickman, of your city, that on presentation by them at your counter, of said 'called' bonds, they are to receive in exchange for same an equal amount (say thirty thousand dollars) of five per cent 10-30 year, Butler County, Mo., Funding Bonds, together with interest on the said six per cent 'Compromise' bonds from October 1st, 1889, to March 1st, 1890; but should Wernse & Deickman deposit with you this day to the credit of said county, the total sum of $30,000 you are to deliver to them the $30,000, of five per cent bonds above described which we herewith deliver to you, say 60 bonds, $500 each, Nos. 1-60 inclusive, and you are hereby authorized to pay said six per cent bonds as presented, whether by Wernse & Deickman or other persons — face value, together with interest at six per cent from Oct. 1st, 1889, to March 1st, 1890, and charge these payments to said county, as made, and when all six per cent bonds ($30,000) shall have come into your possession under this arrangement, you will cancel and send them by express, marked 'Valuable Papers'—addressed to the clerk of this county, at

Poplar Bluff, Mo., unless in meantime I should instruct you differently concerning their return.

"MARTIN FERGUSON,
"County Treasurer of Butler County."

The advertisement referred to in the letter is as follows:

"*To Butler County (Mo.) Bondholders:*

"Notice is hereby given that Butler County (Mo.) 5-20 year 6 per cent funding bonds, Nos. 293, 294, 295, 296, 308, 309, 310, 312, for $1,000 each; Nos. 313 to 342 inclusive, for $500 each; and Nos. 353 to 422 inclusive, for $100 each, are called and hereby declared due and payable, and will be paid at the Boatmen's Savings Bank, St. Louis, Mo. (where they are payable by their terms) on March 1, 1890, and that interest will cease on that day.   By order of the County Court.

"MARTIN FERGUSON,
"Treasurer of Butler County, Mo."

The cashier thereupon delivered to Ferguson the following letter:

"ST. LOUIS, March 1st, 1890.

"*Butler County, Mo., Mr. Martin Ferguson, Treasurer.*

"DEAR SIR:—I hereby acknowledge receipt, per your own hand, of your letter to us of to-day, together with the $30,000 five per cent funding bonds therein described, which, under your instructions, we have delivered to Messrs. Wernse & Deickman, upon payment to us by them of $30,933, which we have placed to your credit on our books.

"We note your instructions concerning payment of the $30,000 'called' six per cent bonds, and same shall have due attention.

"Have already paid to-day about ten thousand dollars worth, report of which will be made by book-keeper in due course.     Very truly,

"WM. H. THOMSON, Cashier."

Whether or not defendant's cashier saw the orders of the county court or retained them in his possession, the evidence, as has been said, is conflicting. He admits that some paper was shown him, but says he refused to accept the bonds under the instructions therein given, and hence he prepared the one signed by Ferguson. Ferguson and another witness testify that the orders were shown to the cashier. As appears by Thomson's letter of March 1, 1890, the sum of $30,933 was on that date paid by Wernse & Deickman and the amount was placed to the credit of Ferguson as treasurer of Butler county, on the books of the bank. It appears from the evidence that Ferguson for several years had been holding the office of treasurer of Butler county, and during the time had kept an account, as treasurer, with defendant. That the public money of the county had been deposited in the bank, and drawn out on his check signed officially. A balance of about $1,100 stood to his credit on the books of the bank when this deposit was made. During the year 1891 defendant paid, in principal and interest, out of money deposited to the credit of Ferguson, bonds to the amount of about $23,000 or $24,000. These were paid without a check from Ferguson or further authority than was given by the letter of instruction. The term of Ferguson, as treasurer, expired January 1, 1891. In the meantime defendant had paid his checks, which had reduced his account to about $4,000. A settlement of his accounts as treasurer showed he was indebted on certain of his accounts. Information of this fact seems to have come to the knowledge of the defendant and thereafter it refused to pay his checks unless they were made payable to his successor in office. On such checks it paid the balance standing to the credit of Ferguson. At the conclusion of all the evidence the court, at the request of defendant, declared

"the law to be that under the pleadings and evidence the verdict should be for the defendant."

From a judgment for defendant plaintiff appealed.

I.   A jury was waived and the issues of fact were submitted to the judge, who in that respect performed the duties of a jury.   In such case the finding of facts by the judge are as conclusive upon the appellate court as the verdict of a jury, and will not be reviewed. But in such a trial either party has the right to have the judge declare the theory of law by which he is governed in reaching the conclusion of fact.   This is done in the form of declarations of law, which are analogous to instructions given to juries and which are subject to review by the appellate court in like manner and with like effect.

A demurrer to the evidence in a jury trial invokes a conclusion of law, and admits all the facts the evidence tends to prove and every inference that can be reasonably and logically drawn from the evidence. The declaration of law given at the request of defendant must be treated as in the nature of a demurrer to the evidence, and not as a conclusion of fact drawn from conflicting evidence.   Whether or not defendant had notice of the terms of the orders of the county court and of the scope of the authority of Ferguson, was a question of fact upon which there was a conflict in the evidence, and under the form of the declaration of law given, the court evidently held, as a legal proposition, that such knowledge was immaterial.   With our knowledge of the common practice it would be unfair to the trial court. and unjust to plaintiff, to hold that the court by this declaration found as a fact that defendant had no knowledge of the said order and authority, and thus to conclude plaintiff on that question.   The court does not declare a conclusion of fact, or of law and fact, but a legal conclusion "that under

the pleadings and evidence in the case the plaintiff is not entitled to recover." This is a declaration of law given by the court, and not a finding of fact by the judge sitting as a jury.

II. The question then is, whether or not, if defendant had knowledge of the orders of the county court, which the evidence undoubtedly tended to prove, it could be held liable to the county for the part of the proceeds of the bonds which it paid on the check of Ferguson as treasurer and which he applied to the payment of his official defalcations, or other obligations. The order of the county court recites very specifically that the bonds were issued for the purpose of funding certain old bonds of the county. It appoints Martin Ferguson, county treasurer, as financial agent of the county, and defines and limits his authority to making a contract with Wernse & Deickman for the sale or exchange of the bonds; to receiving the bonds from the county clerk and having them registered, and delivering them to defendant. By its order and letter of instructions the authority and duty of defendant is particularly defined. The bonds are "to be delivered to Wernse & Deickman, or their orders, upon payment to said bank, for said county, of the par value thereof in money or an equivalent or any proportional amount thereof," of the old six per cent bonds. The instructions then direct: "In case of any cash being paid you, you will please apply it to the payment of said six per cent bonds, when later they are presented. Cancel the six per cent bonds as they are received, and when you have the entire $30,000 express them as valuable papers to the clerk of this county. The said Wernse & Deickman will pay you for your services." These instructions are clear and explicit, and could not have been misunderstood. The limitations on Ferguson's authority is likewise clearly defined. All authority to

transfer the bonds and to keep and pay out the money is vested in defendant bank alone. In pursuance of these instructions defendant received the bonds, collected their par value in money, and transferred them to Wernse & Deickman. The order expressly directs that these acts should be done "for said county." Defendant therefore received and held the money for the county and its duty was to "apply it to the payment of said six per cent bonds when later presented." In these circumstances the relation between the county and defendant can not be regarded as that of creditor and debtor, which is created by a general deposit of money in a bank. On the contrary, defendant occupied to the county the relation of trustee and held the money as a trust fund which could only be applied to the payment of the old bonds mentioned. In such case the law is well settled that a misapplication of the funds would constitute a breach of the trust and the trustee would become answerable for all losses occasioned thereby. *Judy v. Bank*, 81 Mo. 404; *Utley v. Tolfree*, 77 Mo. 307; *The People v. Bank*, 96 N. Y. 36; *Libby v. Hopkins*, 104 U. S. 303; *Sims v. U. S. Trust Co.*, 103 N. Y. 472; *Bank v. O'Hare*, 119 Ill. 646; *Cox v. Prentice*, 3 Maul. & Sel. 344; Bolles on Banks and Depos., sec. 171; *Howard v. Bank*, 80 Ky. 496; *Van Allen v. Bank*, 52 N. Y. 4. The case of *Judy v. Bank*, *supra*, seems to be directly in point. In that case Clark, as agent for Judy, deposited $2,500 with the bank. The certificate of deposit reads: "For account of John P. Clark. To pay off deed of trust on John A. Judy's land in favor of Dyson $2,500." At that time the mortgage was not due. The money was placed to the general credit of Clark, who had an account with the bank. Before the maturity of the mortgage debt Clark drew out the money, on his own check, and appropriated it to his own use. It was held

that the payment of the money to Clark was a breach of trust and the bank was liable to Judy for the loss. "In *Cox v. Prentice, supra,* the principle is asserted by Lord Ellenborough as clear and unquestionable that an agent who received money from his principal, is liable, as long as he stands in his original situation, and until there has been a change of circumstances by his having paid the money to his principal, or done something equivalent to it." "So in *Turnpike v. Watson,* 1 Raw. 330, it is held that an agent of a corporation who has received money for its use can not, in an action for money had and received, brought against him by the corporation, prove by way of set-off, that he has paid the debts of the corporation without showing a special authority. The principle clearly asserted is that an agent can not pay off any debt with a fund intrusted to him for another purpose." "The legitimate inference to be drawn from the cases cited is, that the bank, having received the money from the State for the special purpose of paying the principal and interest of the debt contracted, or money loaned for constructing the Illinois and Michigan canal, can not divert it from its legitimate object, to the prejudice of the holders of the coupons issued on the credit of the fund, by applying it to a balance against the State." These quotations are from a review of cases by Rogers, J., in *Bank v. Macalester,* 9 Pa. St. 475.

If the bonds were received by defendant with knowledge of the duties the county expected it to perform in respect thereto, it became bound by the instructions unless they were modified or changed by the court itself. After receiving the money it had no right to violate the instructions of its principal. If it was unwilling to follow the instructions of the court, it should have declined to accept the bonds or their proceeds. The order of the court limited the authority

of Ferguson, as financial agent, to specific duties, and these ended before the duties of defendant commenced. He had no authority as such agent to bind the county to new conditions which gave him control of the funds and made defendant a mere depository and agent for him; indeed, he had no authority to modify the duties of defendant in any respect. Nor did his official position as treasurer add anything to his authority. The duty of county treasurer is prescribed by law. He is invested by law with no authority in respect to funding the indebtedness of a county. This duty is entrusted to the county courts, which have power, however, to employ a financial agent to assist them. R. S. 1889, sec. 837. The treasurer, as such, or as financial agent of the county, had no authority to modify, amend or rescind the orders of the court. The arrangement, therefore, between Ferguson and the cashier of defendant, by which the money was deposited to the credit of the former, as treasurer, and by which defendant was to deal with an account to the treasurer, instead of the county, was without authority and did not bind the county.

This conclusion is reached on the assumption that the cashier was advised of the duties the county required of him and of the limitations upon Ferguson's authority. It follows that the declaration of law in the nature of a demurrer to the evidence should have been denied.

III.　This conclusion is not affected by the fact that Ferguson had for three years kept his account as treasurer with defendant, had deposited the public money of the county with it, and had paid it out on his own checks, though all these acts were done with the knowledge and with the apparent acquiescence of the county court. At the date of and previous to this transaction, the county court was not required by

law to select the depository of the general public money of the county and had no control of the treasurer in respect to his management of it.    On a general deposit of the county·money the bank became a debtor of the treasurer and not of the county.  *State ex rel. v. Moore*, 74 Mo. 418;  *State ex rel. v. Powell*, 67 Mo. 395.    The money raised for the purpose of funding the indebtedness of the county became a special fund which the county court itself had no authority to divert from the purpose for which it was created.    Its preservation and application were under the exclusive control of the county court.    The court, under its general statutory powers, being authorized to appoint a financial agent to assist it in its duties, had the right to impose such limitation on his authority as it saw fit.    There is nothing in this transaction or in the previous dealings of the county with defendant that estops it to assert the limitation of Ferguson's authority.

IV.   On the other hand, plaintiff insists that though defendant had no actual knowledge of the orders of the county court, or of the scope of Ferguson's authority, still it was chargeable with constructive notice of such orders and is conclusively bound thereby.   The principle is well settled, it is true, that persons dealing with officers of a county, whose powers are limited and defined by law, are bound to take notice of the extent of their authority.   *Sturgeon v. Hampton*, 88 Mo. 213, and cases cited.   But the most ample authority is given by statute to the county courts in the matter of funding the bonded indebtedness of the county.   They are authorized to issue new bonds of the county, bearing a lower rate of interest, to sell them for cash and apply the proceeds to paying those outstanding.   They have the power to appoint a special agent to perform any or all of these duties, except that of issuing the bonds.   The authority to do every act essential to the

sale of the bonds, the preservation and safe keeping of the proceeds, and paying the old bonds, are necessarily implied. It would be wholly impractical to require a separate order of the court for each act that might be necessary to accomplish the general result. Hence the wisdom and necessity of the power to appoint an agent and invest him with authority to carry out the details.

The county court had the power then to appoint Ferguson financial agent and invest him with authority, had it seen fit, not only to sell the new bonds, but to preserve the proceeds and use it in payment of the old bonds. It seems that there ought to be no doubt that, had such authority been given Ferguson, he would also necessarily have had the implied authority to deposit the money in a bank or other safe depository and direct the payment of the bonds as they were presented. Defendant then, when it had the transaction with Ferguson, was only chargeable with notice of such limitations on his authority as the statute imposed upon the county court. He should not be charged with notice of details which the law left to the discretion of the court. These discretionary powers the statute authorized the court to delegate to an agent, and if defendant had no knowledge of the limitations on Ferguson's authority, and was justified by the acts of the court in believing that he had full authority to act in behalf of the county, it was justified in dealing with him and in paying out the money under his direction. It had the right to presume that Ferguson would make proper and lawful use of it. The evidence shows that Ferguson was in fact appointed financial agent of the county. The order designated him as treasurer. The evidence shows further that the bonds, after their execution, were delivered to him, that he had them registered, that he contracted their sale, and had them in his possession when he went to the bank of defendant. It appears

further that the money was paid on the same day. In these circumstances, and without further information, the bank had the right to assume that Ferguson was financial agent of the county for the purpose of completing the business in hand. A deposit of the bonds by Ferguson with directions to the bank to receive the money for which they had been already sold by him, and apply the proceeds to the payment of the old bonds as they might thereafter be presented, were all acts and instructions within the apparent scope of his authority. A principal is bound to a third party who deals with his agent, according to the apparent scope of the agent's authority. *May v. Trust Co.*, 138 Mo. 282; *Sparks v. Dispatch Co.*, 104 Mo. 540.

V. It appears from the evidence that within four days after the deposit was made, Ferguson wrote Mr. Thomson, cashier of defendant, the following letter: "Please pay off bond No. 311, for one thousand dollars, and two months' interest on the same, as this bond has been called at the November term of court, and interest only runs for October and November." At that time it appears that Ferguson as treasurer had to his credit in defendant's bank, of the general money of the county, enough to pay this bond and interest without resorting to the special fund. The bond was paid by defendant as requested, and the amount was charged to the account of defendant as treasurer. Defendant asks that this payment be credited to the bond account. Counsel for the county insists that the bank had knowledge that this bond was not one of those it had the right to pay, and that therefore the money used in paying it was misappropriated, and the defendant should be held accountable to the county therefor, though defendant may have believed, or had reason to believe, that it represented Ferguson alone. As has been said, no one, not even the county court, had the right to divert the

money from the purposes for which it was raised. But the question here is whether the bank was the mere assistant of Ferguson or was the agent of the county. If it was appointed by direction of the county court, and knew that it received its authority from that source, it ought to account for the loss. But if defendant accepted the trust as the mere assistant of Ferguson, having reason to believe that he was vested with full authority to direct the payment of the money, then there would be no such privity between him and the county as would make him answerable to it for money paid under the direction of Ferguson. The act in such case would be the act of Ferguson, the agent of the county, and not of defendant, the assistant or sub-agent of Ferguson.

"Where, by usage of trade or otherwise, a sub-agent is employed with the express or implied consent of the principal, the sub-agent will be responsible directly to the principal, since a privity under such circumstances exists between them;" but "where no privity exists between the sub-agent and the principal, the sub-agent is merely a subaltern of the primary agent, and as such is directly responsible to the latter." 1 Am. and Eng. Ency. of Law [2 Ed.], 983; *Bissell v. Roden*, 34 Mo. 63. The liability of defendant depends, therefore, upon the fact that it had notice that the county entrusted it with the duty of paying out the money.

VI. The evidence shows that at the termination of Ferguson's term as treasurer he was in default on certain of his accounts of which the evidence tends to prove that defendant had notice. At that time he had three or four thousand dollars to his credit in defendant's bank. If defendant's cashier knew that the $30,933 had been raised for the purpose of funding the county debt, then defendant was bound to know that

the money could not be used for any other purpose. In such circumstances it should have required instructions from the county court, or returned the money to the county. It is clear that defendant intended, and supposed it was doing so, but the mistake it made was in treating the treasurer *ex officio* as the general fiscal agent of the county and in supposing that a return of this trust fund to the treasurer, who succeeded Ferguson, was equivalent to returning it to the county. In fact the law gives the treasurer no more authority or control over this money than it gives any other officer or citizen for that matter. But if the money, when paid to the treasurer, did in fact come under the control of the county court, that body had no more authority to apply it to the settlement of Ferguson's account than it had to misapply it in any other manner.

It is sufficient to say, in conclusion, that the liability of defendant depends upon the conclusion of facts about which the evidence is conflicting. The court, therefore, committed error in sustaining defendant's demurrer to the evidence.

The judgment is reversed and the cause remanded for a new trial.

PER CURIAM.—The foregoing opinion prepared by our late associate, MACFARLANE, P. J., having been duly considered, is adopted as the opinion of the court, and in accordance therewith the judgment of the circuit court is reversed and the cause remanded for new trial, BRACE, P. J., and ROBINSON and WILLIAMS, JJ., concurring.