E. E. SOUTHER IRON COMPANY, Respondent, v. THE LACLEDE POWER COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, December 27, 1904.

1. PLEADING: Petition: General Allegations.  In an action to recover an overpayment for electric power furnished by the defendant to the plaintiff under a contract which had been construed by arbitration, a petition containing general allegations of the making of the contract, the dispute as to its construction, the submission, the award, the decree confirming it and the overpayment is sufficient after verdict.

2. ARBITRATION: Award Conclusive.  The award of arbitrators construing a contract is conclusive on the parties to it, and is admissible for the purpose of showing what the contract is.

3. ———: ———: Impossible Conditions.  The fact that the construction of the contract by the arbitrators makes it impossible of performance does not affect the validity of the award or the decree confirming it; the question would arise in the application of the arbitrators' construction of the contract to the conditions which arose under it.

4. CONTRACT: Impossible Conditions.  Where a contract for furnishing electric power provided an impossible means by which the amount of power could be measured and the amount due on the contract ascertained, the party receiving the power was liable only for the actual power used by it, to be ascertained by appliances other than those provided in the contract and adequate for the purpose.

Vol 109 app—23

Iron Co. v. Laclede Power Co.

5. ——: ——. Where a mode of measurement for ascertaining an amount to be paid on a contract is specified in the contract, that mode and no other must be followed, but if the mode provided is impossible of application, then no method is provided.

6. ——: ——: Evidence. In an action for overpayment of the amount on the contract for furnishing electric power which provided an impossible method of ascertaining the amount due, evidence of measurements, made by other means, of power furnished for the same purpose, was admissible.

7. ——: Failure to Perform. The failure of the plaintiff in such a case to pay some of the monthly bills for power furnished, was not a breach of the contract, when the evidence showed that he had already paid the defendant more than the aggregate amount of such bills.

8. PRACTICE: Declarations of Law. Declarations of law given or refused by the court in a case submitted without a jury, show the theory of law upon which the court decided the case, and if such declarations of law are correct, the judgment should be affirmed.

Appeal from St. Louis City Circuit Court.—*Hon. James R. Kinealy*, Judge.

Affirmed.

*C. R. Skinker* for appellant.

(1) The petition shows on its face that the provision of the award and decree confirming the same therein pleaded, to-wit: "but that plaintiff should, however, pay, in any event, at least $412 per year for said power and service," is outside the terms of the submission, and therefore void. No question involving the construction of that clause of the contract of August 1, 1898, was submitted to arbitration; as well might the arbitrators have attempted to construe any or all of the other clauses of the contract. This part of the award is beyond the terms of the submission: Frissell v. Fickes, 27 Mo. 560; Samson v. Young, 50 N. H. 62; DeGroot v. United States, 5 Wall. 419; Clement v.

Durgin, 1 Me. 300. (2) The only method of measurement allowable to prove the alleged excessive payments was measurements by hour meters, that method which the decree ultimately adjudged to be the proper one to be used in performing the contract. It is not competent for plaintiff, or the court, to substitute any method of measurement other than that provided by agreement of the parties because that would be to. enforce a contract against defendant which it has never made. Russell on Arbitration (7 Ed.), pp. 710, 711; Earl Darnley v. Railroad, L. R. 2 H. of L. 43; Gooth v. Jackson, 6 Ves. 11; Canal Co. v. Coal Co., 50 N. Y. 263.

*Hickman P. Rodgers* for respondent.

(1) The award and decree were well pleaded in plaintiff's petition, since they were pleaded according to their meaning and legal effect. Estes v. Shoe Co., 155 Mo. 577, 56 S. W. 316. (2) (a) Courts encourage and favor settlements of disputes by arbitration; and awards and decrees in such proceedings are construed with liberality. Tucker v. Allen, 47 Mo. 488; Shroyer v. Barclay, 24 Mo. 346. (b) And courts refrain from exact and technical interpretation of awards in arbitration and decrees confirming same, and will indulge every reasonable presumption in favor of their finality. 3 Am. and Eng. Ency. Law (2 Ed.), p. 673.

STATEMENT.

Both parties to this suit are corporations organized under the laws of Missouri and both operate their plants in the city of St. Louis. Plaintiff is engaged in the manufacturing business for which purpose it uses machinery. Defendant is engaged in supplying electric power. On August 1, 1898, plaintiff and defendant entered into a contract whereby defendant

agreed to furnish plaintiff electric power for the operation of its machinery "for periods of three years until either party shall, at the expiration of any period of three years, give written notice of its desire to discontinue this arrangement." It was agreed that plaintiff should take a capacity of eighteen electric horse power and if a greater power capacity should be taken at any time, an additional price should be paid therefor on the following basis: "Minimum charges per month under the contract are at the rate of two dollars net per horse power, and are based upon the maximum power capacity required or used at any time, but in no case shall the total payments during each year of the period or periods of this contract be less than four hundred and twelve dollars." Meters were to be furnished at the option of the consumer or the power company. The rate stipulated for was three cents net per horse power per hour, indicated by an hour meter subject to the minimum charge of four hundred and twelve dollars per annum. It was agreed that bills for the use of power should be rendered on the first day of each month, payable on or before the fifth day of the same month, and if unpaid after five days they should be subject to an additional charge of five per cent and if unpaid for fifteen days the supply of power might be shut off by the power company. About the date of the contract, the power company put wires into plaintiff's place of business and continued to furnish it power until April 30, 1901. On the presentation of the bill for the first's month's services, a controversy arose between the parties in respect to the construction of the contract and they agreed in writing to submit the matter in controversy to Hon. Shepard Barclay and Hon. O'Neill Ryan, they to choose a third arbitrator if they failed to agree. The questions which they agreed should be submitted are as follows:

"1. Whether or not the method now in use by the power company at the iron company's establish-

ment, for ascertaining the amount payable for the electric power service or supply, is the correct method under said contract; and, if not, then what is the correct method under said contract?

"2. If the arbitrators find that the method in use is not the correct method under said contract, then whether or not said iron company may, under said contract, lawfully require the said power company (under the conditions of said contract) to place meters at other points in said establishment than at the four moters where the power company's meters are now located."

It was agreed in the written submission that the findings of the arbitrators might be entered as a judgment by the circuit court of the city of St. Louis. The arbitrators chosen failed to agree and selected John Holmes, Esq., as a third arbitrator. The matter was pending before the arbitrators until March 24, 1900, when they published their award. They found as follows:

"The correct method for ascertaining said amount is for said power company to ascertain, charge for, and receive payment from said iron company for only such amount of electrical power furnished to said iron company under said contract as is actually used by the said iron company (provided, however, said iron company must pay in the aggregate at least the sum of four hundred and twelve dollars ($412) during each year of said contract) and such electrical power so used by said iron company is to be measured by hour meters, placed at or upon, such moters as are now or may hereafter be in use by said iron company, in its said establishment, and in addition thereto the said power company shall place or cause to be placed, an hour meter at or on such particular machines (including motors or other machines) in said establishment of said iron company as may be designated from time to time by said iron company (while said contract remains in

force) said iron company making a deposit for such motor so required, to cover its cost, as provided in said contract.''

The award was taken into the circuit court by the iron company and on its motion a decree was rendered confirming the award, to which defendant objected at the time but from which no appeal was taken or writ of error prosecuted.

There were four moters in plaintiff's plant, to each of which defendant attached a wire and an hour meter when it first began to furnish power. After the confirmation of the award of the arbitrators, there was some correspondence between the parties in reference to putting in additional meters, but nothing definite was ever agreed upon and no additional meters were put in . Pending the arbitration, the parties agreed in writing that the defendant should pay the power company's monthly bills as rendered but that such payment should be regarded as involuntary and not to be taken as concessions of indebtedness, and that they should be without prejudice to the iron company for reimbursement for so much of said payments as might be found to be in excess of what might be justly due the power company under the contract as ultimately construed by the arbitrators. The payments made by the iron company to the power company aggregated $2,370.09. exclusive of the power furnished for the months of February, March and April, 1901. The power company rendered bills for each of these three months but payment was refused by the iron company. Its refusal to pay these bills caused the power company to sever its wires from the iron company's plant, and the latter company gave notice of its intention to terminate the contract at the expiration of the first three-year period (August 1, 1901). At the time the contract was terminated, the iron company claimed that it had overpaid the power company the sum of $1,134.09 for the electric power furnished by the latter company for the entire

thirty months. This suit was brought to recover this alleged overpayment.

The answer, in addition to putting in issue all the material allegations of the petition, alleged two counterclaims as a cause of action against the iron company; one for the contract price of the electric power furnished for the months of February, March and April, 1901; another sounding in damages for breach of contract. These affirmative defenses were put in issue by a reply. The reply also alleged that the iron company had given written notice that it would not renew the contract after the expiration of the first three-year period, August 1, 1901. The issues were submitted to the court, without the intervention of a jury, who found for plaintiff in the sum of $1,134.09, with interest at the rate of six per cent per annum from January 16, 1903, the date of the commencement of the suit. After unavailing motions for new trial and in arrest of judgment, defendant appealed.

BLAND, P. J. (after stating the facts).—1. In its motion for new trial, the appellant assigns as one ground therefor that the petition failed to state facts sufficient to constitute a cause of action and insists that the motion should have been sustained on that ground. The petition is somewhat voluminous, covering four printed pages of appellant's abstract. It sets forth the making of the contract, the dispute as to its construction, the submission to arbitration of the disputed matter, the award of the arbitrators, the judgment confirming the award, the payment of monthly bills for electric power under the arrangement entered into between the parties pending the submission to the arbitrators, and alleges an overpayment and asks judgment therefor. It seems to us that this is sufficient, especially after verdict.

2. Appellant objected to the award and decree thereon as evidence, on the ground, first, that the award

and decree were impossible of performance and, second, that the arbitrators exceeded the power delegated to them by the written articles of submission. The contention is that hour meters measure time only and not power, and the arbitrators exceeded their authority in finding that appellant was entitled to four hundred and twelve dollars per annum under the terms of the contract when this question was not submitted to them. The award, when considered in the light of the contract, shows that the reference therein to the four hundred and twelve dollars is only a parenthetical quotation from the contract itself and is made as a matter of precaution to prevent the possibility of either party being misled by the language of the award and really constitutes no part of the findings of the arbitrators. In respect to the objection, that the award and decree is impossible of performance, it is shown by both parties that hour meters do not measure the power but only measure the time machines to which they are attached are operated, and it is also shown that without the aid of some other device, it is impossible to arrive at the quantity of power employed to operate a machine by electricity when nothing more than the time it was in operation is shown from which to make the calculation. But this fact does not appear on the face of the decree confirming the award and, even if it did, we do not think it would show that the judgment is absolutely void. The award and decree construing the contract are conclusive on both parties, and were admissible for the purpose of showing what the contract is; the application of that construction of the contract to conditions that arose under it is quite another thing.

3. The evidence shows that each of the four motors of respondent's plant supplied power for the operation of a half dozen or more different machines, and that all the machines supplied with power from any one motor were scarcely ever in operation at one and the same time; frequently one, two or three of such machines,

and sometimes but one, would be running. It appears. from the evidence produced by the appellant that the basis of calculation for its bills was on the horse power multiplied by the hours used. Witness, Elwood V. Matlack, said that the hour meter only registered the hours during which the current was used; that the hour meter could not indicate whether the power generated by the motor was actually used or not; that the appellant's bills took into account the amount of power actually used, determined by an ammeter operating at the same time the hour meters were in operation, and that the bills were made upon the basis of the power required to operate the motors, shafting and machines attached. That his (witness's) conception of what horse power means, under the contract, "is a maximum rate for use of power, and that per horse power means that the maximum rate for use of power, multiplied by the total number of hours shown by the hour meter, would be the amount upon which the bill would be figured at the contract rate of three cents" per horse power per hour. This evidence shows that, by ammeter measurement, the appellant ascertained the maximum amount of power generated by the motors in respondent's plant, and by the hour meters attached to each motor, it calculated the number of hours each one was in operation and on this basis made out its bills, that is, the calculation was based on the maximum power generated by each motor multiplied by the number of hours it had been run, as indicated by the hour meter, irrespective of the number of machines that were supplied with power by the motor. So it reasonably appears that the respondent was charged for maximum power generated by a motor whether that motor furnished power to one, two or a half dozen machines depending on it for power. It was against this method of calculating the power furnished or claimed to be furnished, that respondent protested and which resulted in the submission of the contract to arbitrators for construction. Appellant in-

sists that this method of calculating the power is the one provided for by the contract and there is no evidence that its calculations or bills are erroneous. The contract, as construed by the decree confirming the award, which is not only binding upon both parties, but also upon us, is that respondent should be charged for only such amount of electric power furnished and actually used by it, the quantity of the power to be measured by hour meters placed on the motors, and in addition thereto upon such particular machines as might be designated from time to time by respondent. This construction, according to the evidence, placed the parties in this dilemma. The appellant could charge for only the power actually used by the respondent, the quantity of this power to be measured by hour meters, an instrument or device by which electric power can not be measured. In other words, the appellant was required to make out its bills for power actually used, and a device was designated for measuring this power that would not measure it. For these reasons, appellant claims that its method of calculating the power is the only one permissible under the contract and, according to the decree, no other instrument can be used for measuring the power; yet, in the face of this contention, its evidence shows that it was compelled to use and did use an ammeter (not mentioned at all in the contract) for the purpose of ascertaining the maximum power generated by the four motors in appellant's plant. The gist of the matter in controversy, when submitted for arbitration, was for what should respondent pay, the maximum power generated by the four motors in its plant, or for the actual amount of power used for operating its machines? The decree is that it shall pay for the latter amount only. Now, because an impracticable or impossible means of ascertaining that power is designated in the contract and also by the arbitrators, is the amount of power furnished to be left to the guess of the appellant or should not some practicable and

efficient means be used for the purpose of measuring the power actually used and thus carry out the real intention of the parties as construed by the decree of the court? If not, then the contract is not capable of execution at all and the respondent is liable only for the price of the power actually furnished by it (the price per horse power per hour, not exceeding the price of three cents). So, we think, it matters not which horn of the dilemma the appellant seizes upon, the result is the same; that is, the respondent is liable only for the actual power used by it, to be accurately ascertained by appliances adequate for the purpose.

4. Respondent showed by the evidence of H. H. Humphrey, an educated and experienced engineer, that according to actual measurements made by him of the power being furnished by appellant at the time the measurements were made, the entire amount furnished in one year would not, at the contract price, equal four hundred and twelve dollars. Respondent also showed that after the appellant ceased to furnish it power, it took electric power from the Laclede Gas Light Company for twenty months preceding the trial, and that the average horse power hours per month was 1008 9-10, while the average horse power hours per months for the thirty months appellant furnished power was, according to its bills and measurements, 2658, and yet the evidence shows that respondent used on an average more power per month while taking from the Laclede Gas Light Company than when taking power from the appellant. The power taken from the Laclede Gas Light Company was measured by wattmeters attached to the machines, appliances which the evidence shows measures both time and the amount and power of the current passing through the meter. All this evidence was objected to by appellant, on the ground that the parties having fixed the mode of measuring the power by the contract, no other mode could be resorted to. It is well settled law that where a mode of measurement

for ascertaining an amount to be paid on a contract is specified in the contract, that mode and no other must be followed. [United States v. Robeson, 9 Peters 319; Herrick v. Belknap, etc., 28 Vt. 673; Hood v. Hartshorn, 100 Mass. 117; President, etc., v. Coal Company, 50 N. Y. 250; Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137, 69 S. W. 384.] But the appellant proved that the method provided by the contract for measuring the power was an impossible one and it could not be measured at all by the meter mentioned in the contract, hence it follows that the contract, while it undertook to provide a method, in fact, provided none. In these circumstances, what should be done to ascertain the amount the respondent should pay, try to apply an arbitrary but impossible method of measurement or take the best evidence obtainable to show the actual amount of power used? The latter course was approved by the learned trial court and it seems to us that it was not only the proper course but the only one by which the amount of power furnished by appellant could have been ascertained. The situation was not unlike one where a contract for work provides for payment to be made on the estimate of a particular engineer or architect and the engineer or architect dies before making the estimate, or refuses to make one after the work had been done, or acts fraudulently; in such circumstances, the party doing the work may recover on a *quantum meruit* not exceeding the contract price. [Williams v. Railway, 112 Mo. 463, 20 S. W. 631; Nordyke & Marmon Co., v. Kehlor, 155 Mo. 643, 56 S. W. 287; Herrick v. Belknap, supra.]

5. It is contended by appellant that respondent is not entitled to recover for the reason it failed to perform its part of the contract by refusing to pay the bills for the months of February, March and April. There are two answers to this contention, either of which is sufficient; one is that, according to the evidence and the finding of the court, each of these bills

was for a sum in excess of what was actually due; the other is that at the time these bills were presented the appellant, according to the evidence and the finding of the court, owed the respondent a sum of money exceeding the aggregate amount of those bills.

6. Declarations of law were given, and some asked by defendant were refused. Error on this score is assigned. Either party had a right to ask declarations of law, though the issues were submitted to the court, and they are reviewable here. They serve to show on what theory of law the court decided the case and if they show that the court adopted the wrong theory and came to a wrong conclusion, the judgment should be reversed. [Butler Co. v. Boatmen's Bank, 143 Mo. 13, 44 S. W. 1047; Wheeler v. McDonald & Co., 77 Mo. App. 213.] The declarations of law given are in harmony with the views herein expressed. Those refused are to the contrary, and we conclude that the court committed no error in giving or refusing the declarations of law. There are a number of other assignments of error found in the appellant's brief but as those examined and passed on cover the entire controversy, we deem it unnecessary to extend this opinion to a discussion of assignments of error that do not affect the merits of the cause.

We think the judgment is for the right party and it is affirmed. All concur.