CENTRAL STATES SAVINGS & LOAN ASSOCIATION, a Corporation, v. UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Appellant.—66 S. W. (2d) 550.

Division One, December 22, 1933.

*Hanna & Hurwitz* and *Mann & Mann* for appellant.

582

*Borders, Borders & Warrick* and *H. T. Lincoln* for respondent.

FRANK, P. J.—Suit on a fidelity bond. Plaintiff recovered judgment and defendant appealed to the Springfield Court of Appeals. That court reversed the judgment and remanded the cause, but deeming its opinion in conflict with the ruling of the St. Louis Court of Appeals in Kurre v. American Indemnity Company of Galveston, Texas, 17 S. W. (2d) 685, certified the case here for final disposition.

Plaintiff's petition was in two counts. A jury was waived and the cause was tried to the court. At the close of the evidence, the court, at the request of plaintiff, gave a peremptory declaration of law on each count of the petition to the effect that under the pleadings and the evidence the finding must be for plaintiff.

Defendant contends that it offered substantial evidence tending to show that plaintiff was not entitled to recover and for that reason the peremptory declarations of law directing a finding for plaintiff were erroneous. Defendant cites in support of this contention DeGraw v. Prior, 53 Mo. 313; Butler County v. Boatmen's Bank, 143 Mo. 13, 44 S. W. 1047; Vincent v. Means, 184 Mo. 327, 82 S. W. 96; Crossett v. Ferrill, 209 Mo. 704, 108 S. W. 52; Eaton v. Cates, 175 S. W. 950; Bartlett v. Boyd, 175 S. W. 947; A. Jaicks Co. v. Schoellkopf, 220 S. W. 486.

On the other hand, respondent contends that the trial being before the court, the peremptory declarations of law amounted to no more than an announcement by the court that, in its opinion, the law and the evidence required a finding for plaintiff. Respondent cites in support of this contention, Stone v. Spencer, 77 Mo. 356, 361; Heynbrock v. Hormann, 256 Mo. 21, 164 S. W. 547, 551.

Each party also cites cases from the Courts of Appeals which support their respective contentions.

We will first determine the question of law raised by the contentions made, then apply the law as determined to the facts of the instant case. The decisions of our courts are not in harmony on this question. Some cases hold that where a law case is tried by the court without the aid of a jury, a peremptory declaration of law directing what the finding of the court must be, is, in effect, a finding of facts and for that reason is not erroneous. Other cases hold the contrary.

The case of A. Jaicks Co. v. Schoellkopf, 220 S. W. 486, cited by appellant, was tried by the court below without the intervention of a jury. The following declaration of law was given: "The court, sitting as a jury, declares the law to be that, under the pleadings and testimony in this case, the judgment must be for plaintiff for the full amount of the tax bills offered in evidence with eight per cent interest from date." In determining the propriety of this peremptory declaration of law, this court said: "It required the court to find from the evidence that there was no substantial evidence for the defense. In other words, it was a demurrer to the evidence of the defense. If there was any substantial evidence to show a defense, such an instruction was error. We think there was such evidence, and the instruction was error." Appellant cites five other decisions of this court holding the same way.

The case of Heynbrock v. Hormann, 256 Mo. 21, 37, 164 S. W. 547, cited by respondent, was tried by the court below without the aid of a jury. The following declaration of law was given: "The court declares that under the law and evidence in this case the plaintiff cannot recover and the finding of the court should be for the defendant." In disposing of the contention that this declaration of law was erroneous, we said:

"If the issues of fact had been tried by a jury the instruction would have been erroneous in taking the case from them by the court, but the issues of fact were submitted to the court, and the instruction announced no more than the verdict found, and cannot be said either to have misled the court or to have withdrawn from its consideration any testimony adduced on the trial. If the law and the evidence warranted the verdict, then this instruction simply declared that the court should do what it ought to have done without any such declaration of its duty. The declaration does not indicate that the court applied any erroneous principle of law to the case. The instructions given for plaintiffs show the theory of law upon which the court proceeded."

Respondent also cites Stone v. Spencer, 77 Mo. 356, 361, and decisions of the Courts of Appeals to the same effect.

It thus appears that there is a conflict of authority in this State on the question. This conflict should be settled once for all so that the bench and bar may know which line of decisions to follow. Our judgment is that the cases cited by appellant announce the correct rule.

The rules governing the giving or refusal of a peremptory instruction to a jury should govern the giving or refusal of a peremptory declaration of law in a law case tried to the court without the aid of a jury. We approve the rule as stated by Division One of this court in Butler County v. Boatmen's Bank, 143 Mo. 13, 23, 44 S. W. 1047. That case was tried to the court without a jury. A

peremptory declaration of law was given reciting that under the pleadings and the evidence the finding and judgment should be for the defendant. This court reversed the judgment and remanded the case because of the giving of that declaration of law. In so doing, we said:

"A demurrer to the evidence in a jury trial invokes a conclusion of law, and admits all the facts the evidence tends to prove and every inference that can be reasonably and logically drawn from the evidence. The declaration of law given at the request of defendant must be treated as in the nature of a demurrer to the evidence, and not as a conclusion of fact drawn from conflicting evidence. Whether or not defendant had notice of the terms of the orders of the county court and of the scope of the authority of Ferguson, was a question of fact upon which there was a conflict in the evidence, and under the form of the declaration of law given, the court evidently held, as a legal proposition, that such knowledge was immaterial. With our knowledge of the common practice it would be unfair to the trial court, and unjust to plaintiff, to hold that the court, by this declaration found as a fact that defendant had no knowledge of the said order and authority, and thus to conclude plaintiff on that question. The court does not declare a conclusion of fact, or of law and fact, but a legal conclusion 'that under the pleadings and evidence in the case the plaintiff is not entitled to recover.' This is a declaration of law given by the court, and not a finding of fact by the judge sitting as a jury."

Of course there are cases in which a peremptory declaration of law may properly be given; as where the plaintiff's case under the pleadings turns wholly on the construction of a written contract, the construction of which is a question of law; or where the answer admits plaintiff's cause of action as alleged in the petition but sets up new matter as a defense, and the evidence fails to make out a prima facie defense. But where the prima facie case made by plaintiff rests on parol evidence, or where the evidence touching the issues made by the pleadings is substantial but contradictory and conflicting, it is always error to declare as a matter of law, or peremptorily instruct a jury as to what the finding must be. Under such circumstances the trier of the facts, whether it be a jury, or a judge sitting as a jury, should make a finding of facts. Where there is a conflict in the evidence, a peremptory declaration of law directing a finding for the plaintiff is not a finding of facts made by the court sitting as a jury, but is, in effect, a demurrer to defendant's evidence.

In the instant case, in addition to the peremptory declaration of law directing a finding for plaintiff, the court, at the request of plaintiff, gave other declarations which hypothesized facts necessary to be found as a prerequisite to a finding for plaintiff. These dec-

larations are in hopeless conflict and it is impossible to know which one the court followed in determining for whom the finding should be. If the evidence material to plaintiff's right to recover was substantial but conflicting, it was error to declare, as a matter of law, that the finding must be in favor of plaintiff, although other given declarations properly declared the law of the case. This court has so held. [Crossett v. Ferrill, 209 Mo. 704, 108 S. W. 52; Vincent v. Means, 184 Mo. 327, 82 S. W. 96.] For the reasons stated, the cases cited by respondent, as well as all other cases holding contrary to what we now hold on this question should be and are hereby overruled to the extent of such contrary holding.

This brings us to the question of conflict in the evidence. The plaintiff's former corporate name was Burton Building & Loan Association. In October, 1926, its corporate name was lawfully changed to Central States Savings & Loan Association. Three corporations figure in this controversy, Central States Savings & Loan Association, hereafter called the loan association; Burton Building & Investment Company, hereafter called investment company; and United States Fidelity & Guaranty Company, hereafter called guaranty company.

The loan association was engaged in a general building and loan business which included the selling of building and loan certificates, the making of loans, and collecting periodical payments thereon. The record shows that the loan association entered into a written contract with the investment company by the terms of which the investment company was appointed general agent of the loan association for the procuring of business for said association in all territory where such association was authorized to transact business. This contract provides that if the investment company, as general agent, shall appoint any subagents, subordinates or employees, such investment company shall be directly accountable to the loan association for all money or property belonging to the loan association which may come into the hands of such appointees, and that all salaries, commissions or compensation earned by such appointees shall be paid by the investment company, and the loan association shall—under no circumstances—nor in any manner be liable for the same or any part thereof.

The record also shows that the loan association and the investment company, as first parties, and E. A. Reid and J. B. Huffman, as second parties, entered into a written contract by the terms of which E. A. Reid and J. B. Huffman were appointed under the firm name of Reid & Huffman as district agent of the loan association for the purpose of securing applications for savings certificates issued by the loan association, and making loans in certain designated territory. The contract recites that it is understood that Reid & Huffman, as district agent, are the agents of the loan association

and accountable to such association for all moneys received by them as such district agent. The contract provides that collections made by Reid & Huffman as district agent shall be remitted to the loan association on the fifteenth of each month less commissions due them which they are authorized to deduct before making such remittances. Further provision is made in the contract that Reid & Huffman, as district agent, shall furnish a surety bond payable to the loan association.

The bond upon which this suit is based was executed by the defendant, guaranty company. By the terms of the bond, said guaranty company, as surety, in consideration of an agreed annual premium, bound itself to pay to the loan association and the investment company, as their respective interests may appear, any pecuniary loss sustained of money including that for which the employer is responsible occasioned by any acts of fraud, dishonesty or criminal act by any of the employees listed under the bond, directly or through connivance, in any position and at any location in the employer's employ, during the period commencing upon the date each is listed under the bond and continuing until the termination of the bond.

The bond provides that on application, other employees may be added to and listed under the bond by the surety issuing its written acceptance.

The loan association brought this suit on the bond to recover money for which Reid & Huffman, its district agent, failed to account.

The bond was given subject to the condition "that loss be discovered during the continuance of this suretyship for any employee, and notice also delivered to the surety at its Home Office within ten (10) days after such discovery.

The bond also provides that "This bond shall be deemed cancelled as a whole or as to any employee upon the effective date specified in a written notice served by either the employer or the surety upon the other. Such date, if the notice be served by the surety, shall be not less than thirty (30) days after such service. . . ."

The bond in suit was a master bond and covered all employees who were listed thereunder. It is not disputed that Reid & Huffman were originally listed under and covered by the bond. Neither is it disputed that the surety, at the written request of the investment company, through its assistant secretary, Greenwood, did on June 1, 1926, deduct the names of Reid & Huffman from the list of employees covered by the bond, so notified the investment company and credited its account with a return premium of $65. Plaintiff's evidence was to the effect that it discovered the shortage in Reid & Huffman's accounts in the latter part of January, 1927, and notified defendant thereof at its home office within ten days after such

discovery. If, as defendant contends, the bond, as to Reid & Huffman, was canceled on June 1, 1926, plaintiff would not be entitled to recover because, in that situation, the shortage would not have been discovered during the continuance of the bond nor within six months after its termination as provided in the bond. [Lyons v. Surety Co., 243 Mo. 607, 147 S. W. 778.] However, plaintiff contends that the surety had no lawful right to cancel the bond as to Reid & Huffman on the written request of Greenwood, assistant secretary of the investment company, because neither the investment company nor Greenwood had authority to request such cancellation, and for that reason the alleged cancellation was ineffectual.

Defendant contends that the authority of the investment company as general agent over the territory in which Reid & Huffman were operating as district agent of the loan association, constituted Reid & Huffman its subagents, and gave it authority to request the cancellation of the bond as to them.

The loan association did by written contract appoint the investment company its general agent in all territory where the loan association was or might be authorized to transact business. However, we need not determine whether the authority of the investment company as general agent included authority to request the cancellation of Reid & Huffman's bond as district agent, because whatever authority it had, if any, in that behalf, was surrendered by a later contract entered into between the loan association and the investment company, as first party, and Reid & Huffman as second party, by which Reid & Huffman were appointed as district agent for the loan association. The material provisions of this contract have been heretofore set out. By its terms Reid & Huffman were responsible solely to the loan association for all moneys collected. They received their compensation from the association—were required to remit all money collected by them to the association, and were required to give a surety bond payable to the association. There is nothing in this contract to indicate that the investment company as general agent of the loan association had any authority or supervision whatsoever over Reid & Huffman as district agent of the loan association in the territory assigned to them. Evidently the purpose of the investment company in joining with the loan association in making such a contract was to surrender to the loan association whatever rights, if any, it had in that behalf as general agent. We so construe the contract. It therefore follows that the written contracts did not authorize the investment company, as general agent, to request the cancellation of the bond of Reid & Huffman, as district agent of the loan association. However, there is other evidence in the record which must be considered in determining this question.

The record shows that the directors of the loan association were

also directors of the investment company. The two companies occupied the same office. Witness Luna, secretary of the loan association, testified that Greenwood, assistant secretary of the investment company had charge of the bond and the schedule of employees attached thereto; that at times he went to the investment company department to see if any new employees' or agents' names appeared on the schedule; that Greenwood had charge of the bond until the contract between the loan association and the investment company was canceled, at which time the loan association took charge of it.

Greenwood, assistant secretary of the investment company testified that he handled the surety bond; that he had charge of the file containing the schedule showing the employees covered by the bond, and duplicate notices to the surety of deductions from and additions to the bond, as well as the written acceptance thereof by the surety. He further testified that on June 1, 1926, he sent the notice to the surety to deduct the names of Reid & Huffman from the bond; that he was authorized to send such notice by the officers and directors of both companies.

The evidence of Luna and Greenwood tended to show that Greenwood was authorized to request the cancellation of the bond as to Reid & Huffman on June 1, 1926, and, therefore, raised an issue of fact to be determined by the court sitting as a jury.

■ The next question is whether Reid & Huffman were short in their accounts and if so how much.

The following facts appear from the testimony of Mrs. Neil who was bookkeeper for Reid & Huffman during the times in question.

Reid & Huffman carried an account in the name of the loan association in the Queen City Bank, in which they deposited collections made by them for the loan association, to be later remitted to such association at its home office. No funds other than such collections were deposited in this account. Mrs. Neil as bookkeeper made out the deposit slips for the amounts deposited, and drew checks on the account at the direction of either Reid or Huffman. She had no authority to and did not sign checks. At various times Reid & Huffman withdrew funds by check from this account which they used for their own private purposes. At their direction, Mrs. Neil kept a ledger account of all such funds so withdrawn. That ledger account and the various checks representing the amounts so withdrawn were introduced in evidence. Mrs. Neil testified to five small errors in this ledger account, but she testified as to what the correction should be, then said the ledger account as corrected, showed that the amount abstracted from the bank account by Reid & Huffman for their own private purposes was $5072.84. Defendant contends that this ledger account was erroneously admitted in evidence because it was not the best evidence, and because it was not shown to be a book of original entry. Regardless of the merits or demerits

590

of this contention, the original checks by which the money was abstracted, showing the same amount as shown by the ledger, were identified by the bookkeeper who drew the check, and were introduced in evidence. The ledger, if incompetent evidence, was merely cumulative and therefore harmless. The bookkeeper testified that both Reid and Huffman told her their accounts were short. Neither of them testified in the case.

■ Further contention is made that twenty-four of the checks drawn against the bank account were made payable to and collected by the loan association and for that reason cannot be treated as abstractions from the loan association's account.

A sufficient answer to this contention is that the evidence tends to show the checks in question were given to pay the loan association amounts due it from Reid & Huffman which were not payable out of the bank account of the loan association on which the checks were drawn, which, if true, would show an unlawful abstraction of the funds.

Contention is made that the court erred in refusing defendant's requested declaration of law No. G.

This declaration sought to withdraw from the consideration of the jury three of the checks in question totaling $295. The evidence shows that Reid and Huffman at various times took money from the cash drawer and left a cash slip in the drawer showing the amount taken. The bookkeeper testified that in order to clear the drawer of these cash slips, she drew three checks totaling $295 against the loan association's account, payable to the loan association and deposited such checks in the bank to the account against which they were drawn. Of course this transaction did not withdraw any money from the loan association's account. Pending motion for rehearing plaintiff remitted the sum of $295, so this contention drops out of the case.

■ Further contention is made that the court erred in giving declarations of law Number six and seven.

Defendant's theory is that these declarations of law broaden the issues made by the pleadings. The contention is that the petition limits the recovery to funds abstracted from the bank account by means of checks drawn against such account, whereas the declarations indicate that the court took the view that "it had a roving commission to find a loss anywhere in any amount and at any time provided it is under the limits of the bond and within its coverage."

That part of the declarations complained of reads as follows:

"That said Reid & Huffman directly or through connivance fraudulently, wrongfully and dishonestly converted to their own use monies belonging to the plaintiff, coming into their hands as such agent, if so, and that as a result thereof, plaintiff sustained a pecuniary loss of money, etc."

Accepting plaintiff's version of the petition, the contention cannot be sustained. There was no evidence of any abstraction of funds other than those made by drawing checks against the bank account, except the $295 shown to be abstracted from the cash drawer, and that amount was remitted from the finding. If the evidence had shown misappropriation of funds other than those complained of in the petition, a different question would be presented. But where, as here, the proof was confined to the specific acts complained of in the petition, we cannot presume that the court went beyond the proof and found losses of which there was no evidence. Under such circumstances the instruction, if not sufficiently specific, was not prejudicial. [Gately v. St. Louis-San Francisco Ry. Co., 332 Mo. 1, 56 S. W. (2d) 54, 62, and cases cited.]

█ The record shows that $51 was withdrawn from the bank account in question on checks drawn by Mrs. Neil, the bookkeeper, and signed by one Morris. Contention is made that this evidence does not show an abstraction of funds by either Reid or Huffman. The record shows that in October, 1926, Morris acquired the interest of Huffman in the partnership, and the partnership was thereafter known as Reid & Morris. Mrs. Neil, the bookkeeper, testified that she drew the checks in question at the direction of Mr. Reid, and that Morris signed them because Reid was not in the office at the time. This evidence is sufficient to show an abstraction by Reid.

Our conclusion is that plaintiff made a prima facie case, but the judgment must be reversed and the cause remanded, because of the error of the court in peremptorily declaring as a matter of law that the finding must be for plaintiff. It is so ordered. All concur.